THE STATE ex rel. BOATMEN'S BANK v. GEORGE D. REYNOLDS et al., Judges of St. Louis Court of Appeals.

In Banc, January 26, 1920.

1. **CONFLICT IN OPINIONS: Certiorari to Court of Appeals: Unjust Decision.** Upon *certiorari* directed to a Court of Appeals based on an allegation of a conflict of its opinion in a given case with prior decisions of the Supreme Court, the Supreme Court cannot interpose merely because it may regard the decision of the Court of Appeals as unjust. The sole inquiry is: Is the opinion in conflict with controlling decisions of the Supreme Court? If it is, the record must be quashed; if it is not, the writ must be quashed.

2. **SEWER DISTRICT: Lot: Definition.** Section 14 of Article 6 of the Charter of St. Louis relates, not to sewer districts, but to the construction of streets, boulevards and alleys, and the word "lot" used therein is required to be construed "as used in this section," and is not to be understood as a definition of "the lots of ground" and "the lots and parcels of ground" used respectively in Sections 21 and 22, which relate to district sewer and joint sewer ·districts, according to which assessments of benefits are made by area, and not by front-footage, and wherein the words "lit" and "parcels of ground" are used as equivalent terms.

3. ————: **Tax Bills: Against Lots Instead of Whole Tract: Dedication of Streets.** Where the recorded plat divided a tract into seven lots, designating streets and alleys thereon, separate tax bills to pay the costs of constructing a district sewer may, under the ·charter

of St. Louis, be issued against the lots severally, and are not void because one tax bill was not issued against the tract as a whole, although the streets and alleys have not been actually established; nor is there anything in Bambrick Bros. Construction Co. v. Semple Place Realty Co., 270 Mo. 450, that requires the assessment to be made by one tax bill against the entire tract. Nor was it necessary that there should have been a dedication of the streets and alleys to public use, according to the recorded plat, in order to give validity to the tax-bills.

4. ——:——: Substantial Compliance With Charter Provisions. If charter provisions concerning the assessment of benefits for a public improvement have been substantially complied with and the improvement has been made according to contract, irregularities which do not injuriously affect the interests of the property-owner should not be permitted to defeat a suit on the tax bills; and where such is the case, a ruling by the Court of Appeals that such irregularities render the tax bills void and in the same opinion denouncing the ruling as unjust, is in conflict with Sheehan v. Owen, 82 Mo. 458.

5. ——:——: Directory Provisions. A charter provision concerning a district sewer which requires the issuance of "a special tax-bill against each lot in the district" should be held, in the absence of a showing of some loss or damage to the property owner, to be directory only; and where the sewer has been constructed in substantial compliance with charter provisions and the contract, a holding that such a requirement is mandatory and the tax bills void because the entire assessment was not included in one tax bill against the entire tract, is to confiscate the labor and material which went into its construction, and is in conflict with Granite Bituminous Paving Co. v. McManus, 244 Mo. 184.

## Certiorari.

RECORD QUASHED.

*Jehmann & Lehmann, Paul V. Janis* and *Thos. R. Reyburn* for relator.

(1) The Court of Appeals, in deciding the case of Boatmen's Bank, v. Semple Place Realty Co. failed and refused to follow the last controlling decisions of the Supreme Court in the following cases: Bambrick Bros. Const. Co. v. Semple Place Realty Co., 270 Mo. 450; State ex rel. v. St. Louis, 211 Mo. 606; Sheehan v. Owen, 82 Mo. 465; Neil v. Ridge, 220 Mo. 233; State ex rel. v. Eicher, 178 S. W. 174.

*Eliot, Chaplin, Blayney & Bedal* for respondents.

(1) The Supreme Court, in reviewing the decision of the Court of Appeals upon *certiorari* only determines whether the Court of Appeals in announcing the law of the case upon the facts as stated in its opinion failed to follow the last previous ruling of the Supreme Court. State ex rel. Peters v. Reynolds, 214 S. W. 122. (2) Bambrick Brothers Const. Co. v. Semple Place Realty Co., 270 Mo. 450, is not a last controlling decision. (a) In the Bambrick case the Court was dealing with tax bills of a "joint district sewer." In the instant case the Court of Appeals was dealing with the tax bills of a "district sewer." These are different. Former Charter of St. Louis, sec. 20, art. 6; Prior v. Const. Co., 170 Mo. 442. (b) The charter provision for issuance of tax bills for joint district sewers is different from that for district sewers, to-wit, in joint district sewers the tax bills are issued against "all of the lots or parcels of ground." Former Charter of St. Louis, sec. 22, art. 6. In sewer districts against "all the lots." Former Charter of St. Louis, sec. 21, art. 6. (c) The decision in the Bambrick case turned on whether the tax bills were issued against "parcels of ground," which was not and could not be in the instant case. (3) State ex rel. Skrainka Construction Company v. City of St. Louis, 211 Mo. 591, is not a last controlling decision. (4) Neither is Sheehan v. Owen, 82 Mo. 458, nor Neil v. Ridge, 220 Mo. 233, nor State ex rel. v. Eicher, 178 S. W. 171, a last controlling decision.

WILLIAMSON, J.—We turn to the opinion of the Court of Appeals for the following statement of the facts:

"This in an appeal by plaintiff from a judgment of the Circuit Court of the City of St. Louis in favor of the defendants upon certain special tax bills issued for the work of constructing sewers in Harlem Creek Sewer District No. 7 in St. Louis. The seven tax bills in issue aggregate $5,750.61.

4 SUPREME COURT OF MISSOURI.

State ex rel. Boatmen's Bank v. Reynolds.

"It is not necessary to set forth the petition in the case, as its sufficiency is not challenged. The petition is in the usual form to enforce the alleged lien of seven special tax bills issued July 29, 1912, to the plaintiff bank's assignor, by the City of St. Louis, for the alleged construction of district sewers against seven alleged separate parcels of land in St. Louis, according to streets and alleys conforming to those shown on a plat of the so-called Semple Place, recorded in the office of the Recorder of Deeds of the City of St. Louis, on December 24, 1892.

"As to the answer it is sufficient to state that, among other things, it alleges that the lots or parcels of land against which the seven tax bills were issued constituted one entire tract of land which, since January 1, 1909, was the private property of defendant, J. Denniston Lyon, trustee under the will of Charles J. Clarke, deceased; that the tract had never been laid out or subdivided, and that Kossuth, Brown and Slevin avenues in said tract, and upon which parts of the sewers in question were laid, were the private property of defendant, J. Denniston Lyon, trustee. That parts of the sewers in question were constructed on the said so-called streets and alleys without the consent of the said trustee, Lyon, or the beneficiaries of the trust. The answer then alleges that each tax bill is void because it is assessed against a part of a single parcel of land; because the ordinances are invalid in that they require parts of the sewer to be built on the private property of the defendants; because the enforcement of the bills would deprive the defendants of their property without compensation or due process of law, contrary to the Constitution of the United States and of the State of Missouri.

"The answer, as stated, is pleaded in seven counts, each count being directed at a count in the petition, and each setting up, among others, the above defenses, The answer to each count, however, includes a prayer that should the tax bills be held valid, nevertheless the court should reduce the tax bills to such an amount as would represent the proportion of the cost of the

sewers, exclusive of those constructed on defendant's land. The reply was a general denial. .

"As to the trial, plaintiff having made out a prima-facie case, the defendants offered in evidence deeds affecting title to the lots described in the tax bills and embracing the land included in the sewer bills, and also other land, and affected by this suit. These deeds show that the land in question, together with other land, was conveyed by Charles J. Clarke and wife to John V. Hogan on October 11, 1892; that on said date said Hogan excuted a deed of trust on the said land, including the land in question, to William Booth, trustee for the said Charles J. Clarke. On November 15, 1902, said Hogan conveyed the land in question, by warranty deed, to the Semple Place Realty Company. Defendant next offered in evidence the plat of Semple Place, executed December 6, 1892, by the Semple Place Realty Company, John V. Hogan and one Christiana Winklemeyer, acknowledged and recorded in the Recorder's office of the City of St. Louis, December 24, 1892, said plat subdividing the land against which the said tax bills were issued, into lots described in said tax bills, the streets and alleys being designated thereon.

"The deed of trust on the said land, of October 11, 1892, was foreclosed and the defendants offered in evidence a trustee's deed from William Booth, trustee for John V. Hogan, to Charles J. Clarke, dated May 17, 1897, reconveying said land, which had been subdivided, as aforesaid, and a plat thereof recorded. Defendants also introduced the will of said Clarke, showing the probate thereof of January 7, 1900, by which will John V. Hogan and Frank Semple were made trustees for the residuary estate embracing, among others, the land against which the tax bills were issued, for the benefit of defendants, Louisa S. Clarke, Thomas S. Clarke, Louis S. Clarke, Joseph K. Clarke, Mabel McCrea, Mildred Painter, Clarke Painter and Alden Painter.

"Defendants introduced testimony which was not contradicted, to the effect that a portion of the sewer con-

6        SUPREME COURT OF MISSOURI.

State ex rel. Boatmen's Bank v. Reynolds.

structed under the ordinances creating the sewer district was located on what was alleged to be Brown, Slevin and Kossuth avenues and certain alleys, all of which said streets and alleys were located on a part of said Semple Place, as appears on the recorded plat thereof, hereinafter mentioned.

"Leo Osthaus, the Assessor of Special Taxes for the City of St. Louis, a witness for the defendants, testified that part of the sewer district had been constructed upon the above named avenues and alleys as shown on the recorded plat of Semple Place, and that he had assumed from the recorded plat that these avenues were open streets, but that at the time of the drawing of the bills in suit he had not personally known anything about the physical characteristics of the particular parcels of land and had not seen the land prior to that time, but that he had assessed the property according to the plat, which showed the streets and alleys thereon, as shown by the said records, since 1892, and that in calculating the area of the district against which the tax was assessed the witness had treated the so-called streets and alleys in Semple Place as open streets and alleys and not as belonging to the Clarke estate, but as highways.

"On cross-examination the witness testified that in figuring out the area of defendants' property, to be charged with its proportion of the costs of the entire sewer, the area of the streets and alleys claimed by defendants to be private property, had been excluded, to-wit, 123,151 square feet; that the total cost of the sewer was $89,717.98; that the cost of the construction of that part of the sewer of which defendants complain, namely, on Brown, Kossuth and Slevin avenues, and the alleys, as shown on the plat of Semple Place, was $2,872.36; that if there was deducted from the total cost of the sewer the cost of constructing the sewers claimed to be on the private property of the defendants, the total cost of the sewer would be reduced to $86,845.42; that if the defendants' property was treated as one entire tract, and if the area of the streets and alleys which defendants

claim to be private property, are figured in determining defendants' proportion of the reduced cost of the sewer, then in spite of the reduction of the total cost of the sewer from $89,717.98 to $86,845.42, the plaintiff's proportion of the reduced total cost, by reason of the increased area caused by the inclusion of the streets and alleys which defendants claim are private property, will be $7,179.55, instead of the present charge against the property of $5,750.61; that the general taxes had been assessed against the property according to the said recorded plat of Semple Place, said assessment for general taxes treating the streets and alleys shown on the plat as though such streets and alleys were public property, and that the general taxes had been paid since 1892 on the city blocks as shown on the plat, and no taxes paid on the streets and alleys claimed to be private property, as designated on the plat.

"Charles R. Skinker, a witness for defendants, testified that he had known the land against which the tax bills sued upon were issued since prior to 1908 and continuously from that time up to the date of the trial; that prior to the enactment of ordinances for the construction of the sewer for which the tax bills here sued upon were issued, the said land was surrounded by one wire fence, without any buildings or improvements of any kind upon it; without any open ways or streets; with a great many trees upon it, and had previously been used for pasture for herds of cattle for a neighboring dairy; that the defendants are all residents of Pennsylvania or New York and have been non-residents for many years. The witness further testified that he had been the attorney for Mr. Lyon, one of the trustees, since 1910; that the witness had first learned of the construction of the sewer when the bills were presented to him for payment, and he went out to the land and found scars on the land where the sewer had evidently been laid; that the defendants had given no permission or license to build sewers on this land; that there had never been any streets upon the property, or alleys, and up to the time of the trial there

8    SUPREME COURT OF MISSOURI.

State ex rel. Boatmen's Bank v. Reynolds.

was no evidence that there ever had been any streets on the land.

"Thereafter, the court found the issues joined on each of the seven counts of the petition in favor of all defendants upon the pleadings and proof adduced, and adjudged that plaintiff take nothing by said counts; that all defendants be discharged and recover of plaintiff their costs of the action. Plaintiff in due time filed a motion for new trial, which was subsequently overruled, and plaintiff appeals."

The case of Bambrick Bros. Construction Co. v. Semple Place Realty Co., 270 Mo. 450, was a suit concerning the validity of sewer tax bills affecting the same property here in question and against the same defendants. In the Bambrick case, as here, seven tax bills had been issued against the seven lots in Semple Place, and it was claimed there, as here, that the tax bills so issued should have been issued as one instead of seven, and against Semple Place as a whole instead of the lots composing it. The only difference, if any, lies in the fact that, in the Bambrick case, the tax bills were issued for the construction of a joint district sewer, while in the pending case they were issued for the construction of a district sewer. In the Bambrick case we held the seven joint district sewer bills valid while in the case in hand respondents have held the seven district sewer bills void. These bills amount to $5750.61. That the sewers were properly built, under proper authority and that the tax bills were issued for the correct amount is not questioned. As stated, the vital defect is said to be that seven bills were issued instead of one. It is not claimed that the property owners are compelled to pay more, nor that the benefits to them are less, by reason of that fact, nor that they are otherwise injured in any respect. In other words, the bald, technical defense is made that because the bills are seven in number, instead of one, and against seven lots, instead of against a tract enclosing those lots, therefore the property owners are

*Lot or Parcel*

absolved from paying anything. " 'Tis a great price, for a small vice.''

To state this proposition is to demonstrate its injustice. Indeed, the learned respondents were so deeply impressed with the unconscionable character of this claim that upon a rehearing granted by them, they denounced their own decision as one "obviously inequitable and unjust," but felt themselves bound to adhere to it because of "controlling opinions of the Supreme Court touching the matter in hand." However, under the limitations imposed upon us in proceedings by *certiorari,* we are not at liberty to interpose merely because we may regard the decision as unjust. Our sole inquiry is: Is the opinion in conflict with our own controlling decisions? If it is, we must quash the record. If not, we must quash the writ. [State ex rel. Peters v. Reynolds, 214 S. W. 121.]

Counsel for respondents tersely state their contention as follows: "To summarize, tax bills in a district sewer improvement are only issued against lots as defined in the Charter, but in a joint district sewer improvement may be issued either, (a) against lots, or (b) parcels, i. e., in the instant case (involving a district sewer), the tax bills to be valid must be issued against lots, but in the Bambrick case they could be issued either against lots or parcels of ground.''

The reason is said by respondents' counsel, to lie in the difference in phraseology of Section 21 of Article VI of the Charter of the City of St. Louis, concerning district sewers, and Section 22 of the same article of the same charter, concerning joint district sewers, when construed in the light of Section 14 of that article, defining the word lot. Counsel contend that Semple Place is "a parcel of ground," and not a lot or lots; that district sewer tax bills cannot issue against "parcels of ground," but against lots only, and even then such bills can issue against such lots only as conform to the charter definition of lot as found in Section 14 of the charter, and hence the tax bills here in suit are void. The question

10        SUPREME COURT OF MISSOURI.

State ex rel. Boatmen's Bank v. Reynolds.

is thus presented whether or not the charter definition of lot, found in Section 14, shall be held to apply to the word lot as used in Section 21. So much of Article VI of the Charter of St. Louis as is deemed pertinent to this question, is as follows:

Sec. 21. "As soon as a district sewer . . . is . . . completed, the Sewer Commissioner shall cause to be computed the total cost . . . and certify the same to the president of the Board of Public Improvements, and the president . . . shall assess it as a special tax against all the lots of ground in the district respectively. . . ."

Sec. 22. "Whenever the whole or a section of a joint district sewer is fully completed, the Sewer Commissioner shall cause the total cost . . . to be computed, and shall certify to the president of the Board of Public Improvements, and the president . . . shall assess it against all of the lots or parcels of ground in the joint sewer district . . ."

Sec. 14. "The word 'lot' as used in the section, shall be held to mean the lots as shown by recorded plats of additions or subdivisions, but if there be no such recorded plat, or if the owners of property have disregarded the lines of lots as platted and have treated two or more lots or fractions thereof as one lot, then the whole parcel of ground or lots so treated as one shall be regarded as a lot for the purpose hereof."

It will be noted that Section 21 provides that the tax shall be assessed against "all the lots of ground." Section 22 uses the words "all of the lots or parcels of ground." Upon that difference the fate of the tax bills here in suit is said to hang. We take judicial notice of the provisions of the Charter of the City of St. Louis (Mo. Cons. Art. 9, sec. 21; Jennings Heights Land & Imp. Co. v. City of St. Louis, 257 Mo. 291, l. c. 300), and hence we know that Section 14 of the charter, supra, relates, not to sewers districts, but as its title states, to the "Construction of Streets, Boulevards and Alleys," a

wholly different topic. Scanning the paragraph defining the word lot, we find that it is expressly limited to a definition of that word "as used in this section."    These are plain words, and plainly limit the charter definition of the word lot to Section 14. A reason for that limitation will presently appear. Section 14 provides, among other things, for the construction of pavements and sidewalks and for repairing them, and for the issuance of special tax bills for the cost thereof. The method of determining the amount of such tax bills, as against any particular tract of land is, as to sidewalks, the familiar one of assessing against each lot such a proportion of the total tax as the front feet of that lot bear to the total number of linear feet of all  property abutting on the sidewalk so to be constructed.   As to paving, curbing and guttering, one-fourth of the cost is assessed in like manner, and the remainder is levied upon a benefit district. District sewer and joint district sewer tax bills are levied upon a different plan, namely, upon the proportion of the area of each particular tract to the area of the entire district, without regard to street frontage. [See Sections 21 and 22, Charter of St. Louis, supra.] Furthermore, districts for laying sidewalks, curbing, guttering and otherwise improving, or for constructing boulevards, streets and alleys, are required by other portions of Section 14 to be laid out with special reference to lots: "the district line shall be so drawn as to include the entire depth of all lots fronting on the street to be improved," but "if there is no parallel or converging street on either side of the street to be improved, the district lines shall be drawn three hundred feet from and parallel to the street to be improved," to quote the language of Section 14; whereas, sewer districts may be of such form and dimensions as may be prescribed by ordinance, without regard to streets or lots. These differences are sufficient reasons both for the peculiar limitation placed upon the word "lot" as used in Section 14 by the charter definition above quoted, and also for the fact that that special definition is expressly limited to the use of that word in that section. So defined, it has no

12     SUPREME COURT OF MISSOURI.

State ex rel. Boatmen's Bank v. Reynolds.

relevancy to Sections 21 and 22. Under Section 14, a lot having no street frontage would pay no sidewalk tax, and only a three-fourths assessment of paving tax, but it would be taxed its full assessment under Sections 21 and 22 for sewer purposes, regardless of its lack of street frontage. It follows that as to Sections 21 and 22 of the charter, then, the word lot is released from the limitations set upon it by Section 14, and hence is to be understood in its usual and ordinary meaning. In "Soule's Dictionary of English Synonyms," the word lot is said to be synonymous with "portion, parcel, division, part, piece of land." Webster defines it as follows: "The term lot may refer to a large piece [of land], such as is usually called a field, tract, parcel, block, etc." A standard legal text defines lot as follows: "Applied to real estate, it is a term of indefinite meaning, and must be interpreted with due regard to the context and the subject-matter: thus the word may be employed as referring to a division, parcel, piece, portion or tract of land." [25 Cyc. 1629.] Since the charter definition of lots applies only to the section relating to streets, the construction based upon that definition of Sections 21 and 22, relating to sewers, falls to the ground. Absent that artificial and forced construction, "lots" and "parcels of ground" may be used as equivalent terms as well with reference to district sewers as to joint district sewers, and the opinion involved in the case in hand is thus seen to be squarely in conflict with our decision in the Bambrick case, supra. This is true even upon the assumption that that decision rested upon the narrow ground that the tax bills there involved "were issued against parcels of ground," as is contended by counsel for respondents. But we cannot agree to that contention. The decision in the Bambrick case was put upon a much broader and more satisfactory foundation, as clearly appears from the following excerpt: "It will be noted in comparing the two provisions of the charter that the latter [Section 14] defining the word 'lot' and the sense in which it is to be used, does not purport in any way to define what shall be the significance of the phrase 'parcel

of ground.'   Unless, therefore, appellants are able to show that the property affected by the tax bills in suit does not enclose the several 'parcels of ground' designated in the tax bills, there is no merit in their contention that the judgment in this case fixing a lien on these several parcels of ground violated the charter." [Bambrick Const. Co. v. Realty Co., 270 Mo. 1. c. 457.]

In the printed opinion the word "enclose" appears as "disclose," but that is obviously a mere typographical error.   To use the word disclose in that connection makes the entire sentence meaningless, whereas to substitute "enclose" gives point and pertinency to the sentence and harmonizes it with the context.

The statement of facts above, quoted from respondents' opinion, shows that the plat of Semple Place was before the court, and that the plant subdivided "the land against which the said tax bills were issued, into lots described in said tax bills, the streets and alleys being designated thereon." "The property affected by the tax bills in suit," that is, the seven lots of Semple Place, is thus shown not only "to enclose the several 'parcels of ground' designated in the tax bills," as was said in the Bambrick case, but in fact to be identical with them, and there is hence no merit in the contention that the tax bills are invalid.   Respondents' opinion upholding that contention does not follow our decision in the Bambrick case, where the contrary was held, as to the same property and on substantially the same facts.

In the case of Sheehan v. Owen, 82 Mo. 458, this court said, at page 465: "The work has been done by the plaintiff.   No complaint is made that it was not done according to the contract, or that plaintiff is in any manner charged with notice of alleged irregularities in the proceedings of the council or the acts of the city officials,   and while there may have been

Substantial Compliance.

some irregularities, the ordinances were substantially complied with by the city authorities and nothing done or omitted which could possibly have affected injuriously the interests of the defendant

or other property holders, and we are not inclined to turn a plaintiff out of court who has given his time and expended his money in the improvement of their property on mere technicalities which in no manner affect the substantial rights or interest of the parties. If, in any material respect, the ordinances of the city bearing upon the questions involved had been disregarded by the city authorities or the plaintiff, his suit on his tax bill could not be maintained; but discovering no such disregard of the ordinances or any material error committed in the progress of the trial in the court below, the judgment is affirmed. All concur.''

The principles stated in that opinion are sound and salutary, and when applied to the facts here involved, afford ready escape from the painful position in which the learned, able and conscientious jurists composing the St. Louis Court of Appeals conceived themselves to be when they felt bound in the same breath to affirm the decision and to denounce it as unjust. In the Bambrick case, we held the tax bills to have been issued in substantial compliance with the provisions of the charter, and therefore to be valid. In the Sheehan case, and in numerous others that might be cited, we have held substantial compliance with charter provisions in matters of this sort to be sufficient, and for very obvious reasons it is to the interest of all concerned, the property owner, as well as the contractor, that such compliance should be sufficient. [Gist v. Construction Co., 224, Mo. 369, l. c. 379.] Respondents' statement of facts taken from their opinion shows substantial compliance in the instant case. While we have the highest regard for respondents' ability and learning, as exemplified in the opinions of their court, we nevertheless believe that their opinion in the instant case is in conflict, in principle, with our decisions in both the Bambrick and the Sheehan cases, supra.

Another phase of this situation may well be considered. Concerning writs of *certiorari*, we have held as follows: ''The divergence of opinion which will authorize this court to quash the opinion and judgment

of the Court of Appeals is a contrary holding upon a given 'question of law or equity.' Rulings upon a 'question of law' may be the same, although different states of fact may call for such rulings. In other words, as stated above, there may be a clear contrariety of opinion on a 'question of law or equity' without having two cases exact in history or facts—a 'grey mule' case is not required." [State ex rel. v. Reynolds, 265 Mo. 88, 1. c. 93.]

Respondents, in construing Section 21 of Article VI of the St. Louis Charter, relating to sewer tax bills, which provides for the issuance of "a special tax bill against each lot in the district," hold void the seven tax bills issued in the instant case, on the ground that, under the facts stated, but one tax bill should have been issued against the entire tract. This holding

**Directory Provision.** is based on the principle of law that the whole proceeding, as respondents say, is *"in invitum* and rests exclusively upon a substantial adherence to the method prescribed by the ordinances authorizing the same, and of the charter as its basic power." Otherwise stated, respondents hold the language of Section 21, supra, providing for "a special tax bill against each lot in the district," to be mandatory, and not directory. Indeed, in their opinion on the motion for a rehearing, they so hold in express terms.

Section 24 of the same article of the Charter of St. Louis, provides, with reference to all special tax bills, that "in every such tax bill there shall be designated either the city treasurer, or . . . the name of some bank or trust company, to whom payment of such bill may be made." Certain tax bills were issued without conforming to that requirement of the charter, and the property owner contended that they were void for that reason. The property owner did in fact have notice of the place where the tax bill might be paid, although the tax bill itself did not convey that information. Concerning this contention, this court said: "The provision of Section 24 of Article 6 of the city charter requir-

ing that the tax bill shall name the city treasurer or some bank or trust company doing buisness in the city to whom the payment shall be made is, in our opinion, purely directory. We can conceive no reason why such an omission should be considered fatal to this tax bill. . . . In this case, the owner had notice of the place of payment, which, though not the statutory designation of the place of payment, yet gave the owner the full benefit of the statutory requirement, and reduces the objection to a pure technicality. To declare the tax bill void on account of such omission would be equivalent to a confiscation of the work and material furnished by the plaintiff in the construction of the street.'" [Granite Bituminous Paving Co. v. McManus, 244 Mo. 184 l. c. 192-3]. The tax bills were accordingly held to be valid.

Like reasoning applies here with like force. In this instance the property owners were presented with seven slips of paper calling for an aggregate of $5,750.61, as their part of the cost of building a sewer, and asserting a lien for that sum upon certain lands. It is undisputed that if that identical sum for that identical service had been demanded in one slip of paper, asserting an identical lien therefor upon those identical lands (plus the portion devoted to streets and alleys), there would be no defense to the claim. It is also undisputed that to sustain this contention is to confiscate the labor and material which went into the construction of this sewer. That contention is sustained reluctantly, under protest, and by force of supposed necessity, by respondents in their opinion in the case under consideration, upon the ground that the charter provision in question is mandatory. We think that the provision of the charter requiring the issuance of "a special tax bill against each lot in the district," in the absence, as here, of a showing of some loss of damage to the owner arising from a failure to observe the charter direction, is directory only; and that the principles announced in the McManus case, supra, apply with full force and are in conflict with the opinion here in question.

The very high esteem in which we hold the judicial utterances of respondents has led us to examine, with studious care, all of the cases cited by them in their opinion now under review, as well as those cited by counsel in the brief filed in respondents' behalf, and in the brief analysis which follows we point out the reasons why we regard them as inconclusive.

Kansas City Milling Co. v. Riley, 133 Mo. 574; Granite Bituminous Paving Co. v. McManus, 244 Mo. 184; McShane v. City of Moberly, 79 Mo. 41; Funkhouser v. Lay, 78 Mo. 458; Landis v. Hamilton, 77 Mo. 554, and Brinck v. Collier, 56 Mo. 160, are cited in support of the argument that there was no dedication of the streets and alleys of Semple Place to public use. We do not think it necessary that there should have been any such dedication in order to give validity to the tax bills here in suit, and so further discussion of that point may be waived.

Barber Asphalt Paving Co. v. Munn, 185 Mo. 552, and Sheehan v. Owen, 82 Mo. 458, are cited to the point that the right of the city to create a lien upon an abutting property-owner for street and sewer improvements is, in the language of respondents' opinion, *"in invitum* and rests exclusively on a substantial adherence to the method prescribed by the ordinance authorizing the same, and of the charter as its basic power." To this doctrine we assent. We find in it nothing to conflict with the views expressed by us in this opinion. On the contrary, these cases support the doctrine of substantial performance. All other cases cited in respondents' opinion relate to points not touching upon the validity of these tax bills, and for that reason they need not be discussed.

Counsel for respondents cite all of the cases cited in respondents' opinion, and State ex rel. Peters v. Reynolds, 214 S. W. 121, and Prior v. Construction Co., 170 Mo. 439, in addition. State ex rel. Peters v. Reynolds, is cited to the same point to which we have cited it in this opinion, and about which we quite agree

2—281 Mo.

with respondents' counsel, while Prior v. Construction Co. is cited only in support of counsel's statement that joint district sewers and district sewers are different things. They are, but that fact in no wise affects the questions in issue here.

For the reasons stated, the record in the case of Boatmen's Bank v. Semple Place Realty Company et al., now before us, should be quashed. It is so ordered. All concur.