**LAND TITLE INSURANCE COMPANY OF ST. LOUIS, Plaintiff-Respondent,**

v.

**Robert J. EISENHAUER, et al., Defendants-Appellants.**

**No. 41814.**

Missouri Court of Appeals, Eastern District, Division One.

Nov. 17, 1981.

Benson Cytron, House Springs, Raleigh Robinson, St. Louis, L. B. Eckelkamp, Jr., Washington, for defendants-appellants.

R. A. Wegmann and Mark T. Stoll, Richeson, Roberts, Wegmann, Gasaway, Stewart & Schneider, Hillsboro, for plaintiff-respondent.

STEPHAN, Presiding Judge.

Plaintiff sued to enjoin defendants from interfering with the use of a private street, Causeway Drive, in Bayshore Subdivision in Jefferson County, Missouri, by erecting a barricade. Defendants filed a counterclaim for declaratory judgment that plaintiff and other property owners who were joined by defendants had no interest in or right to use any streets of the subdivision. Judgment was rendered in favor of plaintiff permanently enjoining defendants on plaintiff's action and against defendants on their counterclaim. Defendants appeal; we affirm.

On September 20, 1963, the L. J. McNeary Construction Co. recorded a plat for "A Tract of Land in U.S. Survey 2020 T. 42 & 43 N., R 6E., Jefferson County, Mo." known as Bayshore Subdivision. The plat showed 336 individual lots, a park, a community center, various streets and three tracts labeled Commercial Tract "A", Commercial Tract "B" and Industrial Tract "C". After granting easements for sanitary sewer purposes on all the streets, the plat recited that "[t]he above mentioned streets are private and for the exclusive use and benefit of owners of Lots in this subdivision."

Subsequently, on January 8, 1964, and July 30, 1964, documents captioned "Restriction Agreement" (actually trust indentures) were executed and filed by the construction company through its president,

Lawrence J. McNeary. Together the agreements covered the 336 individual lots. They contained identical provisions relating to the streets in the subdivision whereby L. J. McNeary Construction Co. granted its interest in the streets to the Trustees of Bayshore Subdivision "for the use and benefit of the lot owners of Bayshore Subdivision." The Trustees were charged with the duty to "keep the said streets and parkways open at all times for the private use and benefit of owners of lots in Bayshore Subdivision." In order to perform this duty the Trustees were authorized to levy an annual assessment against the "owners of the lots in the above described tract." The agreements did not include in their "area of application" any portions of Commercial Tracts "A" or "B", Industrial Tract "C", the park or community center.

In October, 1968 Commercial Tract "B" was subdivided into Lots 1, 2 and 8 and recorded as Bayshore Apartments-Plat One. In November, 1968 the tract was subdivided into Lots 3, 4 and 5 and recorded as Bayshore Apartments-Plat Two. In December, 1968 it was subdivided into Lots 6, 7, 9 and 10, recorded as Bayshore Apartments-Plat Three, and Lots 11, 12 and 13, recorded as Bayshore Apartments-Plat Four. On January 8, 1969 Commercial Tract "B" was resubdivided into two additional Lots 1 and 2. Thereafter, various subdivisions and resubdivisions within Commercial Tract "B" occurred, as well as changes in ownership of the lots in the tract. These events need not be detailed here; suffice it to say that Land Title Insurance Co. (plaintiff) acquired title to Lots 1 and 2 of Bayshore Apartments-Plat One and Lot 4 of Bayshore Apartments-Plat Two in April, 1970.

Commercial Tract "B" was bounded by Causeway Drive on the south. Lots 1–2 of Bayshore Apartments-Plat One and Lot 4 of Bayshore Apartments-Plat Two, carved from Commercial Tract "B", abut Causeway Drive.

In August, 1970, access to Causeway Drive for tenants of plaintiff's apartments was blocked by defendants. This original obstruction was removed. Another was erected in June, 1971, which was also removed, and a third barricade was implanted in August, 1971. Defendant Eisenhauer, one of the subdivision trustees, testified that all barricades were removed, "[o]nce we went to court."

Defendants contend on appeal that the trial court's judgment was not supported by the evidence. They claim that certain evidence, i.e., the plat showing Bayshore Subdivision and two Restriction Agreements pertaining to 336 individual lots shown on the plat, was misinterpreted by the court in entering its judgment. Defendants argue that the language in the plat reserving the use of the streets in Bayshore Subdivision to "owners of Lots in this subdivision" meant to exclude the owners of Commercial Tract "B" from use of the streets. They suggest that their interpretation of the language in the plat is bolstered by the Restriction Agreement, which grants the developer's interest in the subdivision streets in trust to trustees for the use of "owners of lots in Bayshore Subdivision." Defendants contend that "lot" and "tract" are not synonymous: lot means numbered residential area of land and tract indicates unnumbered commercial area.

Appellate review here is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) so that the judgment of the trial court will be sustained unless there is no substantial evidence to support it. The issue as framed by the pleadings was whether plaintiff was a lot owner entitled to use Causeway Drive in Bayshore Subdivision, and the trial court found the issue for plaintiff. Under the familiar tenets of *Murphy v. Carron*, supra, we cannot disagree.

General principles for interpreting plats were noted in *Byam v. Kansas City Public Service Co.*, 328 Mo. 813, 41 S.W.2d 945, 949 (1931) where the court quoted 18 C.J. 109, § 127:

"Plats by which dedications are made are to be interpreted by the court as any other writing would be, and are to be construed as a whole in order that the intention of the party may be as-

certained, and every part of the instrument be given effect . . . ."

Accord *Schell v. City of Jefferson*, 357 Mo. 1020, 212 S.W.2d 430, 435 (banc 1948). The court is not limited to the "words written and markings made on the plat. We must give effect to the meaning and intent exhibited by the outlines of the plat." *City of St. Louis v. Koch*, 335 Mo. 991, 74 S.W.2d 622, 623 (1934). Plats must be interpreted as other documents, such as contracts and deeds, to ascertain the intent of the parties.

■ The term "lot" is one of indefinite meaning and must be interpreted in light of the context and subject matter. *State ex rel. Boatmen's Bank v. Reynolds*, 281 Mo. 1, 218 S.W. 337, 340 (banc 1920) where the court, in seeking the meaning of "lot" as used in the Charter of the City of St. Louis, noted that the word Lot might refer to division, parcel, piece, portion or tract. The plat refers to use of the streets, including Causeway Drive, for the "owners of Lots in the subdivision." The subdivision includes the individual numbered residential lots, two commercial tracts, one industrial tract, a park and a community center. Commercial Tract "B" was subdivided into lots for residential purposes only seven months after the plat of Bayshore Subdivision was recorded. So, in actuality, the subdivision includes the original 336 individual lots, one commercial tract, one industrial tract, a park, a community center and another commercial tract, a portion of which contains sixteen additional individual lots. The entire length of Causeway Drive abuts Commercial Tract "B", and Lots 1, 8 and 9, carved from Commercial Tract "B", border on Causeway Drive. Lots 2–6 and 10–13 do not adjoin Causeway Drive but the tenants of these lot owners, as well as the tenants of Lots 1, 8 and 9, can reach Highway 231 ("VV") only via Causeway Drive. It was clearly the intention of the developer of Bayshore Subdivision, as shown by the plat, to grant the right to use Causeway Drive to lots created by the subdivision of Commercial Tract "B", by the resubdivision of Commercial Tract "B", and by the resubdivision of the resubdivision of Commercial Tract "B". The term lot as used in the plat was not limited to the lots existing on the date of recordation of the plat.

The language in the Restriction Agreement does not prevent our conclusion that all owners of lots carved from Commercial Tract "B" are entitled to use Causeway Drive. That portion of the Restriction Agreement dealing with "Streets and Parkways" refers to "lot owners of Bayshore Subdivision" or "owners of lots in Bayshore Subdivision." This language does not exclude owners of lots created subsequent to filing of the agreements nor does it exclude lots created by a subdivision or resubdivision of any area in Bayshore Subdivision. Indeed, if lots created subsequent to recordation of either the original plat or the Restriction Agreement were excluded so that their owners did not have the right to use the streets of Bayshore Subdivision, then arguably owners of Lots 1–9, 91–116, and others, which were resubdivided at various times in 1964, were not entitled to use the streets in Bayshore Subdivision. This result would obviously not have been intended by the developer.

The trial court properly interpreted the plat and Restriction Agreement so that plaintiff and its tenants were entitled to the free use of Causeway Drive.

Judgment is affirmed.

DOWD and STEWART, JJ., concur.