**BOATMEN'S FIRST NATIONAL BANK OF WEST PLAINS and West Plains Bank, Plaintiffs,**

v.

**SOUTHERN MISSOURI DISTRICT COUNCIL OF THE ASSEMBLIES OF GOD, et al., Defendants–Cross-claimants–Appellants,**

v.

**Dennis K. VONALLMEN, Noel W. Smith, Samuel Click, J.W. Stapleton, and Gary Smith, Defendants–Cross-claimants–Respondents.**

No. 16870.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 21, 1991.

Motion for Rehearing or Transfer
Denied March 15, 1991.

Application to Transfer Denied
May 3, 1991.

---

Aaron Wm. Sachs, Harrison, Tucker & Hyde and John E. Price, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for defendants-cross-claimants-appellants.

Patrick J. Platter and Paul F. Sherman, Daniel, Clampett, Lilley, Dalton, Powell & Cunningham, Springfield, for defendants-cross-claimants-respondents.

SHRUM, Judge.

We are asked to decide if the trial court erred in entering summary judgment for a local church organization, awarding it control of bank funds against the claim of a second church organization, and in designating its judgment final for purposes of appeal pursuant to Missouri Supreme Court Rule 74.01(b). Although we believe

there exist genuine issues of material fact and that summary judgment was inappropriate, we conclude that the trial court erred in its application of Rule 74.01(b) and that there is no final judgment from which an appeal lies. Accordingly, we dismiss the appeal without prejudice.

## PARTIES ON APPEAL, PROCEDURE BELOW, AND FACTS

This lawsuit concerns a dispute over which of two groups of persons constitutes the board of directors of First Assembly of God Church of West Plains, a.k.a. First Assembly Church of West Plains (the "local church"). The appellants are the Southern Missouri District Council of the Assemblies of God, a corporate body which has attempted to place the local church under "district supervision" and govern it through a "board of trustees" which, the appellants claim, is serving temporarily as the board of directors of the local church. The other appellants are the purported trustees themselves, Rev. L. Jack Moore, Rev. Charles Stoker, and Rev. Joe Combs, and one Noel Crick. The respondents are members of the board of directors of the local church faction that claims the local church is no longer affiliated with the Assemblies of God denomination.

The litigation began as separate actions in interpleader brought by Boatmen's First National Bank of West Plains and West Plains Bank. In their petitions, the banks alleged that the appellants and respondents were adverse claimants to funds in various accounts in the banks. The trial court consolidated the actions, ordered the banks to pay the funds to the circuit court, discharged the banks from liability, and awarded the banks their attorney fees out of the funds.

As the interpleader actions were pending, both parties to this appeal filed cross-claims against one another. Appellants alleged that the local church had been placed under "district supervision" pursuant to the local church's bylaws and that certain actions of the "previous" church board were invalid. Appellants sought an injunction against the "previous" board affecting all local church property, including the bank funds, the church building, the parsonage, the church van, and other unspecified assets. Respondents in their cross-claim alleged that the local church had disassociated itself from the Assemblies of God denomination, renamed itself, and had amended its constitution and bylaws. In effect, the respondents denied the local church was under "district supervision." Respondents sought the bank funds only, asked the court to "adjudge [respondents] duly authorized and entitled to handle the accounts as the Board of Directors of [the local church]," and asked that appellants be required to pay the banks' and the respondents' attorney fees.

After the trial court entered the judgments in interpleader, respondents filed a motion for summary judgment on their cross-claim. From the pleadings, affidavits, and other documents before the trial court when it considered the respondents' motion for summary judgment, the following facts emerge. The local church was incorporated in 1973 under Chapter 355, Missouri's General Not For Profit Corporation Law. In its articles of incorporation, the local church was named "First Assembly of God Church of West Plains, Missouri," but the body did not obligate itself, in the articles, to affiliate with the Assemblies of God denomination. The same year, the local church adopted a document entitled "Constitution and Bylaws of First Assembly of God Church of West Plains, Missouri." The document was amended in 1979 and twice in 1987. The preamble to the document states in pertinent part:

[W]e ... do hereby recognize ourselves as a local assembly in fellowship with, and a part of the General Council of the Assemblies of God. We adopt the following articles of church order and submit ourselves to be governed by this document.

Included among the provisions of the constitution are the following:

## ARTICLE II AFFILIATION

Section 1. While maintaining its inherent rights to sovereignty in the con-

duct of its own affairs, this assembly shall voluntarily enter into full cooperative fellowship with assemblies of like precious faith associated in the Southern Missouri District, and the General Council of the Assemblies of God, with headquarters at Springfield, Mo., and shall share in the privileges and assume the responsibilities enjoined by that affiliation.

. . . .

Section 4. Items not covered by this document are referred to the Constitution and Bylaws of the Southern Missouri District Council.

. . . .

### ARTICLE III PREROGATIVES AND PURPOSES

Section 1. This assembly shall have the right to govern itself.... This right shall specifically include such matters as the ... election of an Official Board.

Section 2. In connection therewith ... it shall have the right to ... own ... any real estate or chattels as may be necessary for the furtherance of its purposes; all in accordance with its constitution and bylaws....

. . . .

### ARTICLE VII GOVERNMENT

Section 1. The government of this Assembly shall be vested in its Official Board which shall consist of the Pastor and five or more ... Deacons. This Board shall act as trustees of the Assembly, the corporate board and all spiritual and material management of this Assembly shall be committed to them, subject to the provisions of this constitution and bylaws. They shall be elected in the manner hereinafter provided.

The following local church bylaw provisions are pertinent:

### ARTICLE II DUTIES OF OFFICERS

Section 1. THE PASTOR ... shall act as chairman of all business meetings of ... the Official Board, and shall be President of the Corporate Board.

. . . .

Section 2. THE DEACONS ... shall serve as the Official Board, the Corporate Board....

. . . .

(c) Should there arise irreconcilable differences between the pastor and members of the Official Church Board, destroying unity and the successful ministry of the local assembly, the District Executive Presbytery, along with the Sectional Presbyter or Assistant Presbyter, if the difficulty is in the church, the Presbyter pastors, upon request from the pastor or a majority of the Official Board, shall investigate such differences and upon a two-thirds vote of the investigating committee, may declare that the church be brought under *District supervision* until such strife ceases (emphasis added).

The last quoted bylaw provision, Article II, Section 2(c), is the cornerstone of the appellants' claim.

On January 11, 1989, the board of deacons of the local church met and wrote the church's pastor, appellant Joe Combs, demanding he resign. On January 12, Combs wrote the district's executive presbytery requesting that body investigate and intervene. Combs stated there were "irreconcilable differences" between the local church board and him.

On January 21, members of the local church met and voted to fire Combs. Appellant Charles W. Stoker, a member of the Southern Missouri District Presbytery Board, was present at the meeting and advised the local church membership of his belief that the January 11 board meeting and the January 21 members meeting violated the constitutions and bylaws of the local church, the district council, and the denomination's general council. Stoker told the membership that its meeting "was not a legal or binding meeting" and that "no subsequent action regarding the pastor could be based on [the January 11 board] meeting...."

Following a hearing on Combs's claim of irreconcilable differences, appellant South-

ern Missouri District Council, on January 26, placed the local church "under district supervision until such strife ceases," "set aside" the local church board, appointed a new local church board, and retained Combs as pastor of the church. The local church appealed that decision to the General Council of the Assemblies of God, which, in a March 27 written opinion, said that the district council had the right to bring the church under district supervision and recommended that the district council remove both the pastor and the local church board.

On April 29, members of the local church met and voted overwhelmingly to disassociate the local church from the Assemblies of God denomination, to amend the articles of incorporation to rename the local church as "First Assembly Church of West Plains," and to amend the local church's constitution and bylaws to reflect disassociation from the Assemblies of God denomination. Following the members meeting, the respondents, ostensibly acting as the board of directors of the local church, resolved that "all property and accounts" of the local church were to be "renamed, transferred and conveyed to the new name First Assembly Church of West Plains...."

On May 4, 1989, the Missouri Secretary of State issued a Certificate of Amendment of a General Not For Profit Corporation which indicated that the local church's articles of incorporation had been amended by changing the name from First Assembly of God Church of West Plains to First Assembly Church of West Plains.

Prior to February 1989, the local church had placed signature cards and corporate resolutions on file with the plaintiff banks authorizing certain of the local church's board members to sign checks and other documents relating to the accounts. In February 1989, the appellants filed resolutions with the banks purporting to change the names of persons authorized to draw on the accounts. In May, the respondents provided the banks with their resolutions revising the names of persons authorized to draw on the accounts. It was conflict-ing claims to the accounts that prompted the banks to file the interpleader actions.

Following a hearing, the trial court granted summary judgment to the respondents and awarded the interpleaded funds to them. In its order, the trial court stated:

> The attempt by the District Council to change the signatories on the bank accounts was not done pursuant to any power granted in the constitution or bylaws of the local church corporation.... The District Council had no legal authority to remove [the respondents] as the board of directors of the local church corporation. Under the bylaws the members of the local church had the authority to remove officers. Thus the District Council had no authority to change the signatories on the various bank accounts.

The court found that from April 6, 1988, until May 3, 1989, the respondents comprised the board of directors for the local church. The court also found:

> That the members of the corporation named First Assembly of God Church of West Plains duly voted to amend the Articles of Incorporation of the corporation by changing the name of the corporation to First Assembly Church of West Plains. That the corporate resolutions adopted by the corporation and given to the banks were effective to establish the signatories listed and to change the name of the owner of the accounts to First Assembly Church of West Plains.

The court ordered the appellants to pay respondents an amount equal to the banks' attorney fees that had been paid out of the impleaded funds. The court specifically stated in its order that "the court does not dispose of the cross claim of [appellants] ... seeking injunctive relief concerning the real property and van belonging to the local church.... In entering this order, the court expressly determines that there is no just reason for delay."

Following a hearing, the trial court overruled the appellants' motion to set aside the summary judgment and the respondents' motion to dismiss the appellants' cross-claim.

## FINALITY OF JUDGMENT QUESTION–ANALYSIS AND DECISION

In their first point on appeal, the appellants allege the trial court erred in designating its judgment as final for purposes of appeal pursuant to Rule 74.01(b). The arguments of the parties focus on the application of the "abuse of discretion" standard elucidated in this court's opinion in *Eyberg v. Shah*, 773 S.W.2d 887 (Mo.App. 1989). We reach no conclusion about whether the trial court abused its discretion because we have determined, for the reasons that follow, that Rule 74.01(b) was improperly invoked.

Missouri Supreme Court Rule 74.01(b) provides in pertinent part:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay.

■ Rule 54(b) of the Federal Rules of Civil Procedure is "the source and 'virtual equivalent' of Rule 74.01(b) and 'federal decisions construing Rule 54(b) are persuasive in applying Rule 74.01(b).'" *Eyberg*, 773 S.W.2d at 894. Final judgments may be certified under Rule 54(b) provided the trial court action "as a whole" encompasses "multiple parties or multiple claims for relief, rather than a single claim resting on multiple theories or a single claim with alternative requests for relief." *Local P–171, Amalgamated Meat Cutters and Butcher Workmen of North America v. Thompson Farms Co.*, 642 F.2d 1065, 1069 (7th Cir.1981).

At issue is whether the suit was a multiple-claim action. Variations in legal theory or relief sought do not necessarily present more than one claim for relief. *Davis v. Dolgencorp, Inc.*, 774 S.W.2d 565, 567 (Mo. App.1989). This principle applies when the variations in legal theory or relief sought arise because of counterclaims or cross-claims. "[T]wo claims are not separate for purposes of Rule 54(b) merely because one is in the complaint and the other in the countercomplaint." *Automatic Liquid Packaging, Inc. v. Dominik*, 852 F.2d 1036, 1037 (7th Cir.1988). One "rule of thumb" to identify whether there are multiple claims is that "claims cannot be separate unless separate recovery is possible on each." *Local P–171*, 642 F.2d at 1070–71.

■ Respondents in their cross-claim sought the bank funds only and a declaration that they were "duly authorized and entitled to handle the accounts as the Board of Directors" of the local church. The appellants sought an injunction against the respondents' use of the bank funds and other church property. In the procedural posture of this case, we believe it appropriate to treat the cross-claims of the parties as though they were a claim and a counterclaim, the resolution of which depend on answering one question: Who constitutes the board of directors of the local church? It is difficult to see, based on the record before us, how one party to this dispute might be awarded the bank funds and the other the church buildings and van.[1]

Because the claims of the parties are not separate, Rule 74.01(b) is inapplicable. *Davis*, 774 S.W.2d at 567; *Gould v. Rafaeli*, 804 S.W.2d 758, 759 (Mo.App.E.D.1990). Because all issues raised by the pleadings have not been resolved, the judgment is not final under § 512.020, RSMo 1986. *Hagemann–Mullen Excavating Co. v. Fenlon*, 670 S.W.2d 584, 585 (Mo.App.1984). We dismiss the appeal without prejudice.

## SUMMARY JUDGMENT QUESTION

■ Because we dismiss the appeal, it is neither necessary nor desirable for us to

---

1. Some courts examine multiple claim questions in terms of potential res judicata effect. *See, e.g., Automatic Liquid Packaging*, 852 F.2d at 1037, where the court stated, "Two claims cannot be separate if together they constitute a single cause of action for res judicata purposes." *But see Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1367 (7th Cir.1990). Based on the record, we would foresee difficulty for appellants were they to bring a subsequent, separate action for the church realty and van. *See Oates v. Safeco Insurance Co.*, 583 S.W.2d 713, 719–21 (Mo. banc 1979).

enter upon a full consideration of the substantive issues of this case. *Wilson v. Hungate,* 434 S.W.2d 580, 582 (Mo.1968). Indeed, an appellate court opinion should be limited to those questions essential to a proper disposition of the appeal. *State ex rel. Ellsworth Freight Lines v. State Tax Com'n of Missouri,* 651 S.W.2d 130, 133 (Mo.banc 1983). Nevertheless, because this case might be retried, "it is proper for us to notice certain contentions which will necessarily be involved on another trial...." *Babcock v. Reiger,* 332 Mo. 528, 58 S.W.2d 722, 729 (banc 1933); *State ex rel. Crawford Cty. R–II School Dist. v. Bouse,* 586 S.W.2d 61, 66 (Mo.App.1979). *See also, Wilson,* 434 S.W.2d at 582–83. We believe our comments are particularly germane should an additional attempt be made to dispose of this case by summary judgment, given the record as it presently exists.

Two questions likely to arise during future proceedings are these:

1.  Whether the local church, operating under Missouri's not-for-profit corporation act, can lawfully adopt a "district supervision" bylaw which empowers the Southern Missouri District Council of the Assemblies of God to assume management of the secular affairs of the local church by temporarily replacing the duly elected directors of the local church when disputes arise among the local directors.

2.  If question one is answered in the affirmative, whether the record in this case reveals genuine issues of material fact about the meaning and application of the local church's "district supervision" bylaw provision.

The appellants contend that, based on the existing record, there exist genuine issues of material fact and, therefore, summary judgment was in error. The appellants point specifically to the following issues they claim remain disputed:

(A) Whether the April 29, 1989, meeting of the local church membership was "properly called or conducted, or effective to accomplish the action taken."

(B) Whether from January 26, 1989, the date of the purported imposition of district supervision, until May 3, 1989, the appellants or the respondents were "the authorized, governing body of the (local) church...."

(C) Whether, in light of the purported imposition of district supervision on January 26, 1989, the resolutions adopted by the respondents at the April 29, 1989, meeting "were effective to establish new signatories and change the names on the bank accounts" and whether the attempt by the appellants "to change the signatories on the bank accounts was ... pursuant to any power granted in the Constitution or Bylaws of the local church corporation...."

(D) Whether the appellants "were entitled to impose District supervision, remove the local church's board of directors, and appoint a board of trustees to manage the local church affairs during the trusteeship of District supervision...."

In support of their contention that these issues remain in dispute, the appellants point to various provisions in the local church's constitution and bylaws and the affidavit of Charles Stoker.[2] Resolution of the contentions raised by appellants turns on an examination of the "district supervision" bylaw. The following questions should aid such an examination:

(1) Does bylaw Article II, § 2(c) (the "district supervision" bylaw) conflict with state law or the local church's articles of incorporation?

(2) What is the meaning of the phrase, "district supervision"?

(3) Is the district supervision bylaw fair and reasonable?

---

2.  We limit our comments to the various documents before the trial court at the time of the hearing on the motion for summary judgment. We decline to consider the material presented the trial court in conjunction with the appel-

lants' motion to set aside the summary judgment. *Billings v. State Farm Mutual Auto. Ins. Co.,* 741 S.W.2d 886, 889 (Mo.App.1987); *Landoll by Landoll v. Dovell,* 779 S.W.2d 621, 627–28 (Mo.App.1989).

## CONFLICT WITH STATE LAW OR ARTICLES OF INCORPORATION

█ The bylaws[3] of a not-for-profit corporation may contain any provision for the regulation and management of the corporation which is not inconsistent with law or the corporation's articles of incorporation. Section 355.100, RSMo 1986. A bylaw provision that is inconsistent with this state's law is void and must give way to the superior authority of the statute. *Swanger v. Nat. Juvenile Law Ctr.,* 714 S.W.2d 170, 171–72 (Mo.App.1986). Likewise, any bylaw provision that conflicts with the articles of incorporation is void. *Burnett v. Barnes,* 546 S.W.2d 744, 748 (Mo.App. 1977).

█ Assuming, for purposes of this discussion, that the local church's bylaw Article II Section 2(c) does, in fact, authorize the appellants to temporarily replace the local church's directors with directors selected by the appellants, we believe the bylaw provision would not conflict with state law or the local church's articles of incorporation.

First, we note that the "district supervision" bylaw does not conflict with the articles of incorporation. The articles of incorporation do not prohibit the temporary replacement of directors in the event of a dispute. In fact, the articles make no provision whatsoever concerning directors, other than to name the six original directors.

Nor does bylaw Article II § 2(c) appear to conflict with state law. The bylaw is not contrary to Chapter 355 provisions concerning the role of directors. The affairs of a not-for-profit corporation shall be managed by its board of directors. Section 355.130, RSMo 1986; *Swanger,* 714 S.W.2d at 172. Chapter 355 defines "Board of directors" as "the group of persons vested with the management of the affairs of the corporation irrespective of the name by which such group is designated...." Section 355.015(8). A "Director" is "a member of the group of persons vested with the management of the affairs of the corporation irrespective of the name by which such group is designated...." Section 355.015(9). If appellants' contentions about the meaning of the "district supervision" bylaw are true, then there is no conflict between the "district supervision" bylaw and §§ 355.015(8), (9) and 355.130 because the temporary directors continue to have the authority to manage the affairs of the corporation.[4]

Nothing in the bylaw conflicts with state law concerning selection of directors. Directors of not-for-profit corporations are to be "elected or appointed in the manner and for the terms provided in the articles of incorporation or the bylaws." Section 355.135.2 RSMo 1986. "Any vacancy occurring in the board of directors ... may be filled by the board of directors unless ... the bylaws provide that a vacancy shall be filled in some other manner...." Section 355.140, RSMo 1986. These statutory provisions do not invalidate a bylaw provision which establishes a procedure for the temporary replacement of elected directors when "irreconcilable differences" arise among the directors.[5]

---

3. Section 355.015(5) defines "Bylaws" as "the code or codes of rules adopted for the regulation or management of the affairs of the corporation irrespective of the name or names by which such rules are designated...." Thus we treat the local church document entitled "Constitution and Bylaws" as bylaws for purposes of application of Chapter 355, RSMo 1986. *See Fletcher Cyc Corp* § 4167 (perm. ed. 1982).

4. In the documents it sent to the banks, the district council referred to its appointees as "trustees." If "district supervision" means that persons serving in some capacity other than as directors were purportedly given authority to manage the secular business of the church, then the bylaw provision would appear to be invalid. Section 355.130; *Swanger,* 714 S.W.2d at 172. However, if the district council appointees are temporary directors, as appellants now contend, the bylaw provision would not conflict with state law.

5. According to the bylaws of the local church, the "Official Board ... shall consist of the Pastor and ... Deacons." Therefore, when Article II, § 2(c) refers to "irreconcilable differences between the pastor and members of the Official Church Board," a possible interpretation of that phrase could be irreconcilable differences among directors concerning the secular affairs of the corporation.

Nor does the bylaw conflict with state law concerning removal of directors. Generally, the removal of a corporation's directors is governed by the provisions of the corporation's certificate of incorporation, its bylaws, its shareholders' agreement, and state legislation. 19 C.J.S. *Corporations* § 454 (190); 18B AM.JUR.2d *Corporations* § 1435 (1985). The power to remove a director is incidental to the power to appoint or elect. *American Center for Education, Inc. v. Cavnar*, 80 Cal.App.3d 476, 492, 145 Cal.Rptr. 736, 746–47 (Ct.App. 1978). The body which appoints a director may also remove a director. *See Cavnar*, 145 Cal.Rptr. at 747.

In Missouri, the legislature has not prohibited temporary removal of directors of not-for-profit corporations during their term nor has the legislature established conditions or procedure for the removal of directors of not-for-profit corporations. The articles of incorporation of the local church contain no director-removal provisions. And, of course, as a not-for-profit corporation, the local church has no shareholder agreements relating to director removal. Here, it was left to the local church corporation, by enactment of bylaws, to establish the procedure for removal, reasons for removal, and criteria or events triggering temporary removal of directors. *See* § 355.100.

Removal of directors under the "district supervision" bylaw would not appear to violate § 355.135, which provides in pertinent part:

2. ... [D]irectors shall be elected or appointed in the manner and for the terms provided in the articles of incorporation or the bylaws. In the absence of a provision fixing the term of office, the term of office of a director shall be one year.

3. Directors may be divided into classes and the terms of office of the several classes need not be uniform. Each director shall hold office for the term for which he is elected and until his successor shall have been elected and qualified.

A bylaw provision which provided for two classes of directors, the first class being those elected for a given term, subject to temporary removal by the district council when irreconcilable conflict arose, and a second class, those appointed by the district council to serve temporarily during periods of irreconcilable conflict, would not conflict with §§ 355.135.2 and 355.135.3 so as to render it void. We do not suggest that such interpretation should be made or that it would be reasonable. We simply state that the bylaw, so interpreted, would not be invalid because it conflicted §§ 355.135.2 and 355.135.3 RSMo 1986.

We note the last sentence of § 355.135.3: "Each director shall hold office for the term for which he elected and until his successor shall have been elected and qualified." This is a "holdover" provision, designed primarily to give continuity to a corporate enterprise in its relations with outsiders. It is not intended to leave in office a director who legally has been discharged or has been legally temporarily replaced. *See Full Gospel Community Church v. Nichols*, 681 S.W.2d 493, 495 (Mo.App.1984); *Fletcher Cyc Corp* § 344 (rev. perm. ed. 1990).

## OTHER QUESTIONS

We emphasize that we reach no conclusions about the meaning of the local church's "district supervision" bylaw. That is left to the trial court after hearing the evidence. Many of the local church's bylaws proclaim its sovereignty and independence; other provisions suggest subjugation to the appellant Southern Missouri District Council. Appellants contend that such subjugation, if it exists, includes the temporary removal of elected directors and their replacement by the district council under the "district supervision" bylaw. Respondents contest that interpretation. Corporate articles and bylaws are to be construed according to general rules governing contracts. *Phillips v. National Trappers Ass'n.*, 407 N.W.2d 609, 611 (Iowa App.1987). Summary judgment based solely on the local church's bylaws would be appropriate only if the meaning of the bylaw provision is "so apparent that

it may be gleaned from the four corners of the instrument itself." *Lammert Furniture Co. v. American Nat. Stores,* 619 S.W.2d 323, 325 (Mo.App.1981).

Nor do we offer an opinion about whether the district supervision bylaw is fair and reasonable. Even though a bylaw might appear to comply with applicable statutes, the bylaw must be reasonable in its practical application. The unreasonableness of a bylaw provision is a question of fact and the findings of the fact-finder will not be disturbed if the evidence as a whole supports the findings. *Brennan v. Minneapolis Soc. for the Blind, Inc.,* 282 N.W.2d 515, 521 (Minn.1979). *See also Dozier v. Automobile Club of Michigan,* 69 Mich. App. 114, 244 N.W.2d 376 (1976); *Braude v. Automobile Club of Southern California,* 78 Cal.App.3d 178, 144 Cal.Rptr. 169 (1978); 18A Am.Jur.2d *Corporations* § 319 (1985). The fairness and reasonableness of the "district bylaw" provision and its application present questions of fact that we leave to the decision of the trial court, subject to our review under the standard mandated by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

## ATTORNEY FEES

Appellants claim the trial court erred in ordering them to pay the attorney fees incurred by the plaintiff banks in their interpleader actions. Generally, an award of attorney fees is dependent on the outcome of the underlying suit. *See Bergstrom v. Bergstrom,* 320 N.W.2d 119, 122 (N.D. 1982); *Aristek Communities, Inc. v. Fuller,* 453 So.2d 547, 549 (Fla.Dist.Ct.App. 1984). Our conclusion, that the trial court erred in its application of Rule 74.01(b) and that there is no final judgment from which an appeal lies, affects also the portion of the order relating to attorney fees.

The appeal is dismissed without prejudice.

FLANIGAN, C.J., concurs in part in result with opinion.

PARRISH, P.J., concurs.

FLANIGAN, Judge, concurring in part in result.

I concur in the result of that portion of the principal opinion which dismisses the appeal for lack of a final judgment. I refrain from expressing my views on the other portions of the principal opinion. "We know of nothing more futile in the law than a decision and opinion by a court in a cause whereof it has no jurisdiction." *Reichardt Motor Co. v. Standard Accident Ins. Co.,* 237 Mo.App. 902, 179 S.W.2d 112, 114 (1944).