**HIGGINSVILLE MEMORIAL POST 6270, Veterans of Foreign Wars of the United States, Inc., Respondent,**

v.

**Travis L. BENTON and Betty L. Benton, Appellants.**

**No. WD 60705.**

Missouri Court of Appeals, Western District.

Jan. 7, 2003.

---

John B. Neher, Lexington, MO, for Appellants.

Weldon W. Perry, Jr., Lexington, MO, for Respondent.

Before JAMES M. SMART, JR., P.J., ROBERT G. ULRICH and RONALD R. HOLLIGER, JJ.

ROBERT G. ULRICH, Judge.

## Factual and Procedural History

This appeal involves a contract for the sale of real property between Travis L. Benton and Betty L. Benton (the "Bentons") and Higginsville Memorial Post 6270 Veterans of Foreign Wars of the United States, Inc. (the "VFW"). On January 29, 1998, the Bentons and the VFW executed a contract whereby the Bentons agreed to assume the loan and resulting debt payments on the VFW building that the VFW owed to Firstar Bank.[1] The purpose of entering the contract was to assist the VFW while it was having financial difficulty. The contract between the Bentons and the VFW contained the following repurchase option:

> SELLER also reserves the option to repurchase the property from BUYERS at any time prior to satisfaction of the indebtedness to Mercantile Bank of Missouri Valley. SELLER may exercise this option by giving the BUYERS thirty days written notice, and SELLER will there after (sic) be solely responsible for the indebtedness to Mercantile Bank of Missouri Valley.[2] In the event SELLER does exercise this re-purchase option, it also must reimburse or repay BUYERS for all moneys (sic) paid to Mercantile Bank of Missouri Valley in satisfaction of the promissory note referenced herein, together with any and all sums paid by BUYERS in connection with the building, including for items such as maintenance, improvements, insurance, taxes or otherwise.

In order to repurchase the building, the VFW had to give thirty days written notice and reimburse the Bentons for all sums paid toward satisfaction of the loan as well as any costs incurred by the Bentons for maintenance, improvements, insurance, or taxes on the building. The repurchase option was included to permit the VFW to repurchase the building when it was financially capable of doing so.

---

1. Mr. Benton was an officer of the VFW at the time that the contract was executed.

2. The original loan was executed between the VFW and Mercantile Bank of Missouri. After the execution of the loan, Firstar Bank purchased Mercantile Bank of Missouri.

A letter was received by the Bentons dated October 11, 1999, informing them of a desire to exercise the repurchase option. The Benton's attorney sent a reply letter on November 8, 1999, stating that they considered the October 11 letter insufficient notice of the VFW's desire to exercise the repurchase option. The reply letter stated that the Bentons interpreted the November 11 letter to mean that certain members of the VFW desired to purchase the building rather than the VFW itself. The Benton reply letter referenced the contract and noted that only the VFW had the right to repurchase the building. The Bentons' letter concluded by requesting that the VFW itself submit notice of its intent to exercise the option and repurchase the building. In the interim, between October 11, 1999, and November 8, 1999, Mr. Benton paid off the loan.

During the same time period, Clyde E. Sousley, Quartermaster of the VFW, made two mortgage payments to Firstar Bank on behalf of the VFW.[3] On April 14, 2000, the Bentons' attorney sent the VFW a letter stating that they were not going to honor the repurchase option of the contract because the VFW had breached the contract by failing to pay for utilities for the last six months. The VFW filed suit on July 28, 2000, seeking specific performance of the repurchase option or in the alternative rescission of the contract.[4] After a bench trial on September 21, 2001, the trial court entered judgment for the VFW by ordering the Bentons to specifically perform the repurchase option. The Bentons filed this appeal shortly thereafter.

The Bentons present five points on appeal. They claim that: (1) the trial court erred in overruling their motion for election of remedies and in failing to require the VFW to elect a remedy because the VFW's petition contained claims of specific performance and rescission which are inconsistent remedies because one seeks to affirm the contract while the other seeks to disaffirm the contract; (2) the trial court erred in overruling their motion to dismiss and in granting judgment for the Bentons because the VFW did not prove by clear and convincing evidence that it tendered payment or that it performed its obligations under the contract in that the evidence presented at trial was clear, uncontested, and uncontroverted that the VFW failed, pursuant to its contractual obligations, to tender payment or reimburse the Bentons for mortgage payments and building expenses that they incurred; (3) the trial court erred in overruling their motion to dismiss and in entering judgment for the VFW because the VFW breached the contract by failing to pay the utilities, water, trash, gas, and telephone expenses from the inception of the contract, for failing to pay other building expenses incurred by the Bentons after October 1999, and failing to reimburse the Bentons for mortgage payments, the payoff amount, and other sums paid by the Bentons for the building; (4) the trial court erred in entering judgment for the VFW because the VFW, as an incorporated body, failed to adhere to its internal procedures and by-laws in exercising the option of repurchase in that its by-laws require a meeting to make such a decision and that such decision was actually made by and for certain members of the VFW; and (5) the trial court erred in entering judgment for the VFW by ordering the

---

3. The mortgage payments were for October 1999 and November 1999.

4. The VFW's original petition contained four counts, two of which were later dismissed by post-trial motions. This left two counts, specific performance and rescission.

Bentons to specifically perform the repurchase option in that the repurchase price should have been $52,546.68 instead of $34,050.94 and the Bentons presented clear, uncountered, and detailed evidence of the exact amount of expenses they incurred. The judgment of the trial court is reversed.

## Standard of Review

■ Appellate review of a judge-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). On appeal, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* In applying this standard, we review the evidence in the light most favorable to the judgment. *City of St. Louis v. Riverside Waste Mgmt., L.L.C.*, 73 S.W.3d 794, 796 (Mo. App. E.D.2002) (citing *Gesellschaft Fur Geratebau v. GFG Am. Gas Detection, Ltd.*, 967 S.W.2d 144, 146 (Mo.App.1998)).

## Discussion

As the fourth point on appeal is dispositive, only it is addressed. In their fourth point on appeal, the Bentons claim that the trial court erred in entering judgment for the VFW because the VFW failed to exercise the repurchase option in accordance with its internal procedures and by-laws. Specifically, the Bentons claim that the VFW failed to provide ten days written notice to its members of the proposal and that the VFW failed to take a vote on whether it should repurchase the building from the Bentons. The Bentons contend that the VFW's failure to comply with these two requirements of its by-laws rendered the exercise of the repurchase option ineffective. In addition, the Bentons claim that the VFW's failure to provide notice to VFW members also resulted in

its failure to comply with certain Missouri statutes governing not-for-profit corporations. As to the voting provision, the Bentons assert that the decision to exercise the repurchase option was made by a few members of the VFW instead of the VFW as a body.

■ To determine whether the VFW complied with its by-laws when exercising the repurchase option, paragraph five of section 709 of the VFW's by-laws is examined. The relevant section states:

> In addition to other legal requirements under existing local laws, no Post, County Council or District shall purchase, sell or otherwise transfer title or any interest in real estate unless written notice of such proposal has first been given to each member of said unit and the Department Commander ten (10) days prior to such regular or special meeting at which the proposal is to be considered, and then only by two-thirds (2/3) vote of approval of those members present and voting at such regular or special meeting.

In effect, the VFW's by-laws contain two requirements regarding the purchase of real estate. First, the VFW unit must provide written notice of the proposal to buy real estate to all of its members and the Department Commander ten days prior to the meeting at which the proposal is to be discussed. Next, at least two-thirds of the members present at the meeting must vote favorably for the proposal in order for it to pass. The Bentons contend that the VFW failed to comply with either of these requirements.

The VFW claims that the issue of whether to exercise the repurchase option arose at the September 21, 1999, meeting. The evidence presented established that there were approximately eighty (80) members on the VFW's membership ros-

ter in September 1999.[5] In order to comply with the notice provision of the by-laws, the VFW was required to give ten days written notice of the proposal to exercise the repurchase option to all eighty members of the VFW and the Department Commander. No evidence was presented to demonstrate that either the members or the Department Commander received such notice. The VFW, thus, failed to comply with its by-laws by not notifying its members or the Department Commander of the pending proposal.

Not only did the VFW fail to comply with its by-laws when it failed to give its members notice, it also failed to comply with Missouri law governing not-for-profit corporations. A non-profit corporation may create by-laws to manage its affairs as long as the by-laws do not conflict with the law or the corporation's articles of incorporation. "The bylaws may contain any provision for regulating and managing the affairs of the corporation that is not inconsistent with law or the articles of incorporation." § 355.116, RSMo 2000. *See also* § 355.131(17), RSMo 2000.[6]

The VFW's by-laws regarding the purchase of real estate are not inconsistent with Missouri law. The VFW failed, however, to comply with section 355.251.1, RSMo 2000, which states, "[a] corporation shall give notice consistent with its bylaws of meetings of members in a fair and reasonable manner." The terminology used by the statute is imperative. The statute uses the term "shall" instead of "may." The VFW was, thus, required by law to notify its members regarding the proposal to exercise the repurchase option as provided for in its by-laws. Its failure to do so resulted in a violation of its by-laws as well as section 355.251.1, RSMo 2000.

The Bentons also contend that the VFW's decision to exercise the repurchase option was ineffective because the VFW failed to obtain a two-thirds vote on the proposal as required by its by-laws. The VFW counters that the proposal was considered and voted on at the September 21, 1999 meeting. In support of their argument, the Bentons rely on the minutes from the September meeting which state: "Meeting postponed until October 19, 1999, at 7:30 p.m. Motion made by CE Soulsley. 2nd by D. Bratton. Carried." "Corporate minutes ... are 'prima facie evidence of what occurred at such meeting.'" *Siteman v. Marine Petroleum Co.*, 511 S.W.2d 436, 441 (Mo.App. E.D.1974) (quoting *Santa Fe Hills Golf & Country Club v. Safehi Realty Co.*, 349 S.W.2d 27, 37 (Mo.1961)). The VFW counters that the minutes are not the only means of proving what occurred at the meeting. Although this argument has merit, the VFW has failed to prove that a vote was taken at the meeting for three reasons.

First, the argument fails because the meeting was postponed. Postpone is defined as "to hold back to a later time; defer; delay." WEBSTER'S THIRD INTERNATIONAL DICTIONARY 1773 (1971). In effect, the postponement of the meeting means that it did not take place as scheduled. It is unfeasible that the VFW discussed the proposal and voted on it at a meeting that did not occur.

The second reason that the VFW failed to prove that vote occurred at the meeting is that the VFW's by-laws require a certain number of members to be present in

---

**5.** Defendant's Exhibit E contained a letter stating that the VFW membership roster contained eighty names.

**6.** A corporation has the power "to do all things necessary or convenient, not inconsistent with law, to further the activities and affairs of the corporation."

order for a meeting to be held. Mr. Benton testified that a minimum of five members must be present for a meeting to be held. "And you have to have five members to have a meeting." None of the evidence presented indicates that at least five members were present for the meeting. Mr. Clyde E. Sousley testified as follows: "It was four or five different members at that meeting that night when we canceled it, and that's when we had the discussion about buying the building back." The issue is whether four or five members attended the meeting. If only four members attended the meeting, there were not enough members present to conduct a meeting. Although other witnesses testified that a vote took place, none of them testified as to the number of members present.

The third reason that the VFW's argument fails is that even if five members attended the meeting, at least two-thirds of the members present had to vote to exercise the repurchase option. In other words, at least three of the members present had to vote to exercise the option. The record fails to establish that three members voted for the proposal. The minutes themselves are conspicuously devoid of any mention of a discussion and vote regarding the repurchase option. This seems odd in view of the fact that the minutes taken at meetings prior to the September 1999 meeting state the number of members present and whether any votes have been taken. Furthermore, several witnesses testified that the repurchase option was an important consideration in the VFW's approval of the contract. Such an important consideration would surely have been discussed and voted on at a VFW meeting.

Even if three members had voted for the proposal, the VFW would have failed to comply with its by-laws by failing to send notice to the membership. Although some members of the VFW may have discussed the repurchase option at the September meeting before it was cancelled, the VFW membership did not receive notice and did not vote to exercise the repurchase option for the reasons stated above.

 The VFW alternatively argues that strict adherence to its by-laws is not necessary. To bolster this argument, the VFW relies on the trial court's judgment as well as case law. Paragraph twenty-five of the trial court judgment reads as follows:

25. That any failure of Plaintiff [VFW] to strictly follow its by-laws and Missouri corporation laws in the exercise of the Option does not negate the exercise of the Option because such failure is an issue to be raised by its members and the exercise of the Option then either ratified or rejected by its members.

The VFW claims that this paragraph stands for the proposition that it need not strictly adhere to its by-laws. It also claims that "[m]inor or technical variations from [ ] bylaws are things of which the law does not take notice." *State ex rel. Willman v. St. Joseph Hosp.*, 684 S.W.2d 408, 411 (Mo.App. W.D.1984).[7] The VFW's argument is unavailing because its failure to comply with its by-laws to determine the will of its members and, therefore, whether the intent of the VFW was to exercise the option to purchase real property, is not "minor or technical." Failure to notify eighty members, take a vote, and pass a proposal by two-thirds of the members present is not a minor or technical violation. Moreover, when an entity decides to incorporate under the not-for-profit laws of

---

7. The case cited was referring to a hospital's by-laws.

Missouri, it submits itself to the state courts' jurisdiction in all matters of a corporate nature. *Rolfe v. Parker*, 968 S.W.2d 178, 182 (Mo.App. W.D.1998) (quoting *Beth Hamedrosh Hagodol Cemetery Ass'n v. Levy*, 923 S.W.2d 439, 443 (Mo. App. E.D.1996)). A trial court has jurisdiction to inquire as to what the by-laws require and determine the parties' adherence to them. *Id.* In this case, paragraph twenty-five of the trial court's judgment is erroneous because substantial evidence was presented to demonstrate that the VFW's noncompliance with its by-laws was significant.

The VFW's final contention is that the Commander and Quartermaster had the authority, actual, apparent, and implied, to exercise the option on behalf of the VFW. "Corporate ... bylaws are to be construed according to general rules governing contracts." *DCW Enters., Inc. v. Terre du Lac Ass'n., Inc.*, 953 S.W.2d 127, 130 (Mo.App. E.D.1997) (citing *Boatmen's First Nat'l. Bank v. S. Mo. Dist. Council of the Assemblies of God*, 806 S.W.2d 706, 714 (Mo.App. S.D.1991)). Contract language is ambiguous when its meaning is uncertain and it is fairly susceptible to more than one meaning so that reasonable persons may fairly and honestly differ on construction of its terms. *Id.* (citing *Clampit v. Cambridge Phase II Corp.*, 884 S.W.2d 340, 345 (Mo.App. E.D.1994)). In this case, the VFW's by-laws unambiguously require notice and two-thirds vote of those members present at the meeting. It is not this court's function to rewrite the VFW's by-laws. Because the by-laws do not provide authority for the Quartermaster or Commander to purchase real property on behalf of the VFW, this argument is meritless.

It is undisputed that the contract contained an option to repurchase, which the VFW could exercise at any time prior to the satisfaction of the mortgage. As a rule, an option must be exercised in accordance with the terms of the option. *Frey v. Yust*, 516 S.W.2d 321, 323–24 (Mo. App.1974) (quoting *Suhre v. Busch*, 343 Mo. 170, 120 S.W.2d 47, 54 (1938)) Acceptance of the option must, moreover, be unequivocal and certain. *Keith v. Tucker*, 483 S.W.2d 430, 435 (Mo.App.1972). To determine whether the VFW's acceptance was unequivocal, the language of the October 11, 1999, letter is considered. In the correspondence, the following language is relevant: "*Several members* of VFW Post 6270 have decided they would like to buy back the VFW building located at 1806 Walnut. This is in accordance with the contract you signed in January of 1998." (emphasis added). The VFW contends that this was a valid exercise of the option. The language in the letter purports to exercise the option on behalf of certain members of the VFW rather than the VFW itself. The terms of the option provide, moreover, that the VFW is the only party with the authority to exercise the option. In this case, the Bentons could not know, on the basis of the October 11 letter alone, that the VFW, as an entity, was exercising the option. Because the letter did not clearly express the intent of the VFW to exercise the option, the exercise of the option was ineffective.

In summary, substantial evidence does not support that portion of the trial court's judgment finding that the VFW properly exercised its option to repurchase even though it failed to adhere to its by-laws and internal procedures. The VFW's failure to provide ten days written notice to its members of the proposal and to take a vote on the proposal rendered the exercise of the option improper. Moreover, the October 11, 1999, letter purporting to express the intent of several members of the VFW to exercise the option failed to clear-

ly express the VFW's intent. Because the Bentons' fourth point on appeal is dispositive, the other points on appeal are not addressed.

For the reasons stated in the opinion, the trial court improperly awarded the VFW judgment by ordering the Bentons to specifically perform the repurchase option of the contract. The trial court's judgment is reversed.

JAMES M. SMART, P.J., and RONALD R. HOLLIGER, J., concur.