DCW ENTERPRISES, INC., Plaintiff/Appellant,

v.

TERRE du LAC ASSOCIATION, INC., Defendant/Respondent.

No. 70608.

Missouri Court of Appeals, Eastern District, Southern Division.

Sept. 16, 1997.

Dennis E. McIntosh, Farmington, for plaintiff/appellant.

David L. Mayhugh, Park Hills, for defendant/respondent.

AHRENS, Presiding Judge.

Plaintiff, owner of subdivision property, brought a declaratory judgment action against the subdivision property owners association claiming that the association had taken actions outside its bylaws in assessing property and imposing a late payment assessment. The trial court declared that the association acted within its powers in those respects. Plaintiff appeals, asserting the declarations in favor of the association were error. We affirm in part and reverse and remand in part.

The defendant, Terre du Lac Association, Inc. (the Association), a not-for-profit corpo-

ration, is the property owners Association for the Terre du Lac subdivision in St. Francois County. The Association is governed by a board of directors. Property in the Terre du Lac subdivision is subject to restrictive covenants, including an agreement to abide by the bylaws of the Association and to make annual payments for the maintenance and operation of the subdivision areas and facilities. Non-payment of the annual charges constitutes a lien on the land. Section 8(A) of the Association bylaws gives the board authority to make and collect assessments against members to defray the costs of the Association. Annual assessments are due on May 1 of each year.

Section 12(B) of the Association bylaws provides: "If any one member shall own contiguous lots, he shall be allowed but one vote regardless of the number of lots so held and shall pay one single assessment thereon in the same amount as the owner of a single parcel of property."

Plaintiff DCW Enterprises, Inc. (DCW) owns a substantial amount of property within Terre Du Lac. At issue in this case is its unplatted property known as "The Campgrounds" and two platted contiguous unimproved lots, 2–M–23 and 3–M–23. The two platted lots are adjacent to one another and share a common boundary with the Campgrounds. Prior to 1991 the Association assessed the two platted lots and the Campgrounds together.

On February 16, 1991 the board passed a resolution that "unplatted areas, except when previously determined, will be considered Commercial areas and not defined as a lot." At the same meeting the board also passed a resolution that the 1991 assessment rate remain the same as the 1990 rate which was $100.00 for an unimproved lot, $200.00 for an improved lot, and $300.00 for a commercial area. Dues remained at $50.00 per year according to the bylaws.

On March 3, 1991, the board passed a resolution that a 10% late payment assessment be charged on delinquent dues and assessments received on or after May 1, 1991. The Association notified property owners of this late payment assessment by a letter accompanying the assessment statements.

As a result of the February 16 resolutions, the Association no longer considered the Campgrounds contiguous to lots 2–M–23 and 3–M–23 for assessment purposes and thereafter assessed DCW separately for the Campgrounds. DCW did not tender payment of the assessment until July 16, 1991 and then did not pay the full amount assessed because it challenged the separate assessment of the Campgrounds. It was then charged the late payment assessment. DCW later paid the late payment assessment under protest in order to prevent liens from being filed on its properties.

DCW filed a two-count petition for declaratory judgment. In Count I, DCW sought a declaration that the Association's bylaws did not permit it to impose the late payment assessment. In Count II DCW sought a declaration that it had tendered the correct assessment amount to the Association based on its interpretation that the Campgrounds is contiguous to its two adjacent lots and is thus subject to one $350.00 assessment. DCW further sought declarations that the Association had wrongfully denied it a building permit and the right to vote in the 1992 board election.

After a bench trial the court entered its judgment and order supported by findings of fact and conclusions of law. The trial court's judgment provided as follows:

1. Lots 2–M–23 and 3–M–23 are not contiguous to the campgrounds parcel such that Plaintiff would be obligated to pay only one single assessment. The assessments as determined by Defendant which Plaintiff has contested in his declaratory judgment action filed herein are and were correct as determined by Defendant.

2. Defendant did not wrongfully refuse Plaintiff's tender of assessments and dues pertaining to Lots 2–M–23 and 3–M–23 and the campgrounds parcel.

3. Defendant is permitted to assess Plaintiff a 10% costs of collection and Plaintiff is not entitled to a refund of any charges pertaining to the imposition of a 10% delinquency fee.

4. Defendant did not wrongfully deny Plaintiff a construction permit in September of 1992.

5. Defendant did wrongfully deprive Plaintiff its right to vote in the election for Board of Directors in November of 1992.

6. Defendant did wrongfully file certain liens against Plaintiff for non-payment of dues and assessments.

7. Defendant is without authority to withhold any and all membership privileges to an owner of multiple lots and/or parcels if the owner is delinquent on assessments pertaining to only one lot and/or parcel.

8. Neither party is awarded attorney fees herein.

9. Defendant is entitled to all money previously deposited with the Clerk of the Circuit Court in disputed membership dues and assessments.

Costs assessed against Plaintiff.

DCW appeals, contending the trial court's declarations in paragraphs 1 through 3 are erroneous. It also asserts the trial court erred in making one of its conclusions of law. It further maintains that this court's reversal of that portion of the judgment, combined with the relief it obtained in declarations 4 through 6, would constitute special circumstances which would entitle it to an award of attorney's fees.

We will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30 (Mo.1976). We accept the evidence and inferences favorable to the judgment and disregard all contrary evidence. *Lake Cable, Inc. v. Trittler,* 914 S.W.2d 431, 434 (Mo.App.1996). We generally defer to the trial court's findings of fact given the trial judge's superior ability to judge the credibility of the witnesses. *Id.* We independently evaluate the conclusions of law the trial court draws from its factual findings and from the admitted facts. *Id.*

I. *Whether the Campgrounds is "Contiguous" to DCW's Lots*

In its first point DCW contends that the trial court erred in concluding that platted lots 2–M–23 and 3–M–23 are not contiguous to the parcel known as the Campgrounds for assessment purposes because the Campgrounds are in fact adjacent to the lots. It asserts that the Campgrounds is contiguous to the lots under the bylaws because the bylaws specifically provide that there shall be one single assessment for contiguous lots and the bylaws refer to parcels and lots interchangeably. DCW argues that the board did not follow its own bylaws when it passed a resolution that "unplatted areas, except where previously determined, will be considered Commercial areas and not defined as a lot." It maintains that the bylaws do not distinguish between commercial and residential uses or purposes.

Section 12 (B) of the Association bylaws provides in part:

> On all matters for which the membership shall be entitled to vote, there shall be one vote allowed for each parcel of property owned by any one particular member. *If any one member shall own contiguous lots,* he shall be allowed but one vote regardless of the number of lots so held and *shall pay one single assessment thereon in the same amount as the owner of a single parcel of property.* If any one member shall own two or more lots which are not contiguous, he shall be assessed for each lot so owned and shall be allowed to cast that number of votes as correspond to the number of lots so owned.

(emphasis added).

 Corporate articles and bylaws are to be construed according to general rules governing contracts. *Boatmen's First Nat. Bank v. Southern Missouri Dist. Council of the Assemblies of God,* 806 S.W.2d 706, 714 (Mo.App.1991). Contract language is ambiguous when there is uncertainty as to its meaning and it is fairly susceptible to more than one meaning so that reasonable persons may fairly and honestly differ on construction of its terms. *Clampit v. Cambridge Phase II Corp.,* 884 S.W.2d 340 (Mo.App. 1994).

The word "lot" has an indefinite meaning and must be interpreted in light of the context and subject matter. *Land Title Ins. v. Eisenhauer*, 625 S.W.2d 208, 211 (Mo. App.1981). The bylaws use but do not define "lot" or "parcel". However, it is clear, after considering the bylaws as a whole, that parcel is used broadly and includes "lots". "Lots" are a class of "parcel".

The broad use of parcel is evident from the following bylaw provisions. Sections 5(A) and 5(B) of the bylaws establish membership rights with respect to the owners of all *parcels* of real property in the subdivision. Section 12(B) allows one vote for each *parcel* of property owned by any one particular member. Section 8(F) provides that the board has the authority to "approve or disapprove proposed purchasers or other transfers in accordance with the provisions set forth in the Covenants and Restrictions of Sale of *parcels* by the Big River Lakes Development Corporation, Inc." (emphasis added).

Section 12(B) is the only provision which refers to lots. It provides that contiguous lots be treated as one parcel for both voting and assessment purposes. The reference to lots is clearly to a specific type of parcel.

The bylaws reflect the fact that Terre du Lac subdivision has both platted areas divided into blocks and lots and unplatted areas. DCW's lots 2–M–23 and 3–M–23 were in Plat 23, Block M and identified as Lots 2 and 3. The Campgrounds was not platted.

When the bylaws refer to "lots" as a class of parcel, the bylaws refer to the platted lots. Under the resolution passed on February 16, 1991, the unplatted campgrounds are considered commercial areas and "not defined as a lot." The bylaws do not require the board to assess an unplatted parcel in the same manner as set out for contiguous lots and do not prohibit a resolution which specifies that unplatted areas are not lots. Since the Campgrounds is an unplatted area which is not a lot, it is subject to a separate assessment under the February 16 resolution. Point one is denied.

## II. *Equal Application of Policy*

In its third point DCW asserts:

The trial court erred in declaring that [the Association's] board of directors did not single out [DCW] in its application of a change in policy with respect to assessments as to lots adjoining a commercial parcel of property because it is against the weight of the evidence in that the policy change should have affected two other property owners by the Association's own admission and [the Association] did not apply the policy against the other owners.

At trial DCW adduced evidence which it contended showed that the Association did not apply its assessment policy to other commercial parcels. In its findings and conclusions, the trial court determined that the Association's board did not single out DCW in its application of a change in policy with respect to assessments as to lots adjoining a commercial parcel of property.

DCW did not seek relief for discrimination and the trial court did not order such relief. Unequal application of the assessment policy would only be relevant under the pleadings if the bylaws and resolution were ambiguous to show the parties' interpretation of those documents. Evidence of how a contract is understood or acted upon by the parties is only relevant when the contract or a contract term is unclear. *Smith v. Taylor–Morley, Inc.*, 929 S.W.2d 918, 922 (Mo.App.1996). We will not create an ambiguity by using extrinsic or parole evidence. *Id.* Since the documents were not ambiguous, this finding, whether supported or not, is irrelevant to the judgment. This court need only consider those issues essential and necessary to the orderly disposition of the appeal on the merits. *Garden View Care Center, Inc. v. Labor and Ind. Rel. Com'n*, 848 S.W.2d 603 (Mo.App.1993). Point three is denied.

## III. *Attorney's Fees*

In its fourth point DCW argues that the trial court erred in failing to award DCW attorney's fees. It asserts that Section 527.100 RSMo and Rule 87.09 authorize an award of attorney's fees as costs in a declaratory judgment action when equitable or when special circumstances exist. In its conclu-

sions of law, the court found that DCW was not entitled to attorney's fees under the particular facts of this declaratory judgment action.

DCW contends special circumstances exist because the trial court's order and judgment clarified the bylaws to the benefit of the property owners and prospective owners and the litigation was "complicated, highly unusual, and certainly not a routine proceeding." It argues that reversal of the judgment combined with the relief granted it by the trial court, entitle it to attorney's fees.

■ The Missouri Declaratory Judgment Act permits the court to "make such award of costs as may seem equitable and just." Section 527.100 RSMo. However, "costs" under Section 527.100 does not necessarily include attorney's fees. *Washington University v. Royal Crown Bottling Co.*, 801 S.W.2d 458, 469 (Mo.App.1990). Rather the American Rule applies to declaratory judgment actions. *Id.*

■ The "American Rule" provides that, with few exceptions, absent statutory authorization or contractual agreement, each litigant must bear the expense of its own attorney's fees. *Id.* at 468; *Mayor, Councilmen, & Citizens, Etc. v. Beard*, 636 S.W.2d 330, 331 (Mo. banc 1982); *County Court of Washington County v. Murphy*, 658 S.W.2d 14, 16 (Mo. banc 1983); *Temple Stephens Company v. Westenhaver*, 776 S.W.2d 438, 442 (Mo. App.1989).

■ "Special circumstances" is an exception to the American Rule. *Mayor*, 636 S.W.2d at 331; *Washington University*, 801 S.W.2d at 468. Correctly interpreted, the "special circumstances" exception to the American Rule is narrow and must be strictly applied. *Washington University*, 801 S.W.2d at 458. Another exception to the "American Rule" is that attorney's fees may, on rare occasions, be recovered where a court of equity finds it necessary to award them in order to balance benefits, but this occurs only if "very unusual circumstances" can be shown. *Washington University*, 801 S.W.2d at 469; *Osterberger v. Hites Const. Co.*, 599 S.W.2d 221, 230 (Mo.App.1980); *Farley v. Johnny Londoff Chevrolet, Inc.*,

673 S.W.2d 800, 806 (Mo.App.1984); *Ohlendorf v. Feinstein*, 697 S.W.2d 553, 557–58 (Mo.App.1985).

Both of these exceptions have been confined to very limited fact situations. Primarily, they have been found in cases involving trusts and estates. In such cases a beneficiary who has successfully brought litigation beneficial to the estate as a whole has been allowed to recover attorney's fees from the estate. *Feinberg v. Adolf K. Feinberg Hotel Trust*, 922 S.W.2d 21, 26 (Mo.App. E.D.1996). *See e.g., Temple Stephens Co. v. Westenhaver*, 776 S.W.2d 438 (Mo.App.1989); *Estate of Chrisman*, 723 S.W.2d 484 (Mo.App.1986); *Estate of Murray*, 682 S.W.2d 857 (Mo.App. 1984); *German Evangelical St. Marcus Cong. v. Archambault*, 404 S.W.2d 705 (Mo. 1966); *Jesser v. Mayfair Hotel, Inc.*, 360 S.W.2d 652 (Mo.1962); *Bernheimer v. First Nat. Bank of Kansas City*, 359 Mo. 1119, 225 S.W.2d 745 (1949).

Another fact situation considered to be special or very unusual circumstances occurs when a litigant has successfully created, increased, or preserved a fund in which non-litigants were entitled to share. In such a case the court may order the non-litigants to contribute their proportionate part of counsel fees. *Feinberg*, 922 S.W.2d at 26. *See e.g., Jesser v. Mayfair Hotel Inc.*, 360 S.W.2d 652, 661 (Mo. banc 1962).

Intentional misconduct was also the basis for an award of fees in one case. *Temple Stephens Co.*, 776 S.W.2d at 443. There the court found special circumstances where plaintiff property owner challenged a zoning ordinance which affected other property owners. In addition defendant had intentionally left plaintiff's name off a list of property owners filed with its zoning application so that plaintiff was thus deprived of other methods of challenging the rezoning. The court found all of these circumstances in combination entitled plaintiff to recover attorney's fees from the defendant who engaged in intentional misconduct, but not from the defendants who did not engage in intentional misconduct. *Id.*

■ The trial court has broad discretion to award attorney's fees and its decision

will not be overturned unless it abuses that discretion. *Consolidated Public Water Supply Dist. v. Kreuter,* 929 S.W.2d 314, 316 (Mo.App.1996). None of the exceptions to the American Rule outlined above are applicable. Thus, the trial court did not abuse its discretion in not awarding DCW attorney's fees with respect to DCW's petition.

## IV. *Late Payment Assessment*

 In its second point DCW asserts that the trial court erred in finding that the bylaws allow the board to impose a late payment assessment. It contends Section 12(C)'s specific provision allowing a 6% interest charge on delinquent payments prohibits the board from implementing any other charges in relation to late payments. We agree.

It is a well-settled rule of contract construction that a court must resolve a conflict or ambiguity in a written instrument by applying specific provisions over general provisions. *Tri–County Retreading v. Bandag, Inc.,* 851 S.W.2d 780, 783–84 (Mo.App.1993). We have held that under this rule, a board's power to collect delinquent assessments is limited to the specific provision in a neighborhood indenture dealing with the collection of assessments regardless of its general power to bring suits under the indenture. *Phillips v. Authorized Investors Group,* 625 S.W.2d 917, 921 (Mo.App.1981).

Here, sections 8(A) and 12(A) of the association's by-laws do vest the board with broad discretion in levying assessments against the members. Section 8(A) of the bylaws provides: "The powers and duties hereby vested in the Board of Directors shall include the authority to make and collect assessments against members to defray the costs and expenses of the Association." Also, Section 12(A) states: "It shall be the duty of the Board of Directors to levy assessments against each member in such amount as may be necessary for the proper administration and operation of the association." However, section 12(C) provides that delinquent assessments shall bear interest at the rate of 6% per annum.

The existence of a specific provision for 6% interest on delinquent assessments in section 12(C) creates an ambiguity as to whether the broad grant of authority to levy "assessments" in sections 8 and 12(A) of the Association's by-laws encompasses the imposition of late fees on delinquent assessments. Thus, under our holding in *Phillips,* the Association's power to impose late fees on delinquent assessments is limited by section 12(C) which specifically regulates the interest the Association may charge for delinquent assessments. Because section 12(C) provides that delinquent assessments shall bear interest at 6% per year, and makes no provisions for late payment fees, we conclude the Association was without authority under its by-laws to impose the 10% late fee. Therefore, we must reverse the portion of the trial court's judgment denying DCW's request for a declaration that the Association's by-laws prohibited the board from imposing the 10% late fee.

The judgment of the trial court is affirmed in part and reversed and remanded in part with instructions to declare that the Association did not have the power to impose the 10% late payment fee. On remand, the trial court shall determine DCW's claims for a refund of the 10% late payment fee under Count I of DCW's petition. In all other respects, the judgment is affirmed.

KAROHL and CRANE, JJ., concur.