49 F.Supp.2d 1148 (1999)
FARMERS INSURANCE CO., INC., Plaintiff,
v.
Alexandros P. PIERROUSAKOS, et. al., Defendants.
No. 4:97CV1848SNL.
United States District Court, E.D. Missouri, Eastern Division.
May 21, 1999.
*1149 David C. Knieriem, Morgan and Associates, St. Louis, MO, for Plaintiff.
Roy A. Walther, III, Walther Glenn Law Associates, Michael A. Gross, St. Louis, MO, S. Lee Patton, Kirkwood, MO, Michelle O.W. Edens, David Vereeke Law Office, Dallas, TX, Richard J. Magee, Jr., McAuliffe Law Firm, L.L.P., Robert Herman, Partner, Schwartz and Herman, St. Louis, MO, Kenneth M. Lander, Kortenhof and Ely, St. Louis, MO, for Defendants.

MEMORANDUM
LIMBAUGH, Senior District Judge.
This matter is before the Court on the plaintiff/counterclaim defendant Farmers Ins. Co.'s motion for partial summary judgment pertaining to the declaratory judgment counterclaims of defendants Brothers, Worrall, and Ford (# 59), filed October 21, 1998. Responsive pleadings have been filed.
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. *1150 v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976).
The matter before the Court involves the construction of an insurance policy and whether it is ambiguous, as it pertains to the extent of coverage. The question of whether an insurance policy is ambiguous is a matter of state law. RLI Insurance Co. v. Drollinger, 97 F.3d 230, 231 (8th Cir.1996); Sargent Const. Co., Inc. v. State Auto. Ins. Co., 23 F.3d 1324, 1326 (8th Cir.1994). In Missouri, summary judgment is routinely used in the context of insurance coverage questions, especially with regard to issues of ambiguity. Lang v. Nationwide Mutual Fire Ins. Co., 970 S.W.2d 828, 830 (Mo.App.1998).
The facts of this case are largely undisputed. On or about March 8, 1997 in Grayson County, Texas defendants were involved in a serious motor vehicle accident involving two (2) automobiles. At the time of the accident, one car was driven by Jeffery Koch with defendant/counterclaim plaintiff Brian Worrall, defendant Alexandros Pierrousakos, and Christopher Brothers as passengers. The other car was driven by defendant/counterclaim plaintiff Wanda Ford. Allegedly, Koch's car collided with Ford's car.[1] As a result of the accident, Worrall, Pierrousakos, and Ford allegedly sustained serious injuries; Christopher Brothers apparently received fatal injuries.[2]
At the time of the accident Koch was a permissive driver of the car owned by William Worrall (Brian Worrall's father). The subject vehicle was insured by plaintiff/counterclaim defendant Farmers Ins. Co. under a policy purchased by William Worrall.[3] William Worrall is the only named insured on the policy issued by Farmers with regard to the subject vehicle. At the time of the accident, Koch was not related to William Worrall by blood, marriage or adoption; and was not a resident of the household of William Worrall.
The Farmers policy, Policy No. 140107570738, contained a per person full limit in the amount of $250,000.00 and a per occurrence full limit of $500,000.00 (Declarations page attached to policy). The policy (Part I  Liability) defines "you" and "your" as the named insured; and "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household". It further defines "insured person" as
1. You or any family member.
2. Any person using your insured car.
3. Any other person or organization with respect only to legal liability for acts or omissions of:
a. Any person covered under this part while using your insured car.
b. You or any family member covered under this part while using any private passenger car, utility car, or utility trailer other than your insured car if not owned or hired by that person or organization.
*1151 Furthermore, the policy (Part ILiability) under the section entitled Other Insurance states in pertinent part:
"If there is other applicable Auto Liability Insurance on any other policy that applies to a loss covered by this part, we will pay only our share. Our share is the proportion that our limits of liability bear to the total of all applicable limits. We will provide insurance for an insured person other than you or a family member, up to the limits of the Financial Responsibility Law only."
Missouri's Motor Vehicle Financial Responsibility Law, among other things, mandates a minimum automobile insurance coverage of $25,000.00 per person and $50,000.00 per occurrence. § 303.010 et. seq. R.S.Mo.
Farmers Ins. Co. has filed this declaratory judgment action asserting that by virtue of the "drop down clause" (as recited above under the policy section entitled Other Insurance), its financial obligation, pursuant to the subject policy, is $50,000.00. It maintains that since Jeffery Koch, at the time of the accident, was not a family member of William Worrall's household and is an insured person under his parents' automobile liability insurance policy, Farmers must only provide insurance up to the limits of Missouri's financial responsibility law; i.e. $50,000.00. It further maintains that since it has tendered the $50,000.00 to the Court's registry, it has no further obligations under the provisions of the subject policy. The declaratory judgment counterclaims[4] assert that Jeffery Koch, and therefore, ultimately, the defendants/counterclaim plaintiffs are entitled to the full limits of the policy issued to William Worrall. They contend that the "drop down clause" is ambiguous for two reasons: 1) it is ambiguous in its wording; and/or 2) it is ambiguous by virtue of its placement in the policy. Plaintiff Farmers Ins. Co. seeks partial summary judgment as to the declaratory judgment counterclaims of defendants Worrall, Ford and Brothers.
Whether the language in an insurance contract is ambiguous is a question of state law. RLI Insurance Co. v. Drollinger, 97 F.3d 230, 231 (8th Cir.1996). Under Missouri law, insurance policies are contracts and the rules of contract construction apply. Sargent Construction Co. v. State Auto. Ins., 23 F.3d 1324, 1326 (8th Cir.1994); Peters v. Employers Mut. Cas. Co., 853 S.W.2d 300, 302 (Mo.1993); Arbeitman v. Monumental Life Ins., 878 S.W.2d 915, 916 (Mo.App.1994); Herpel v. Farmers Insurance Co., 795 S.W.2d 508, 510 (Mo.App.1990). In construing an insurance policy, the words in the policy must be given their ordinary or plain meaning. Interco Inc. v. National Surety Corp., 900 F.2d 1264, 1266 (8th Cir.1990); Farmland Indus., Inc. v. Republic Ins. Co., 941 S.W.2d 505, 508 (Mo.1997); Robin v. Blue Cross Hospital Service, Inc., 637 S.W.2d 695, 698 (Mo.1982). The plain or ordinary meaning is the meaning that the average layperson would understand. Farmland Indus., at 508. When the language of an insurance policy is clear and unequivocal, then the parties will be bound by its clear meaning. Courts are not permitted to create ambiguities where none exists or to distort the contractual language so as to rewrite a policy in order to provide coverage which the parties had not intended, absent a statute or public policy requiring coverage. Krombach v. Mayflower Ins. Co., 827 S.W.2d 208, 210 (Mo. 1992); Rodriguez v. General Acc. Ins. Co., 808 S.W.2d 379, 382 (Mo.1991); Lang v. Nationwide Mutual Fire Ins. Co., 970 S.W.2d 828, 830 (Mo.App.1998). Thus, absent an ambiguity, an insurance policy must be enforced according to its terms. *1152 Sargent Const. Co., at 1326, n. 2 citing Hempen v. State Farm Mutual Automobile Insurance Co., 687 S.W.2d 894 (Mo. 1985). Under Missouri law, "an allegedly ambiguous phrase must be considered in the context of the policy as a whole." Interco Inc., at 1266; see also, Stein v. State Farm Fire & Casualty Co., 120 F.3d 909, 910 (8th Cir.1997); RLI Insurance Co., at 231; Southern General Ins. Co. v. WEB Associates/Electronics, Inc., 879 S.W.2d 780, 782. An ambiguity exists in an insurance contract when there is duplicity, indistinctness, or an uncertainty in the meaning of the words used in the contract. RLI Insurance Co., at 231; Sargent Const., at 1326; Interco, Inc., at 1266; Lang, at 830 citing Krombach, at 210. Furthermore, Missouri law provides that an ambiguity exists in an insurance contract when it is fairly susceptible of multiple interpretations. RLI Insurance Co., at 231; Interco, Inc., at 1267; Southern General, at 782. Although words are to be given their ordinary meaning, if a conflict arises between a technical definition within a contract, and the meaning which would reasonably be understood by the average layperson, the layperson's definition will be applied unless it plainly appears that the technical meaning is intended. Sargent Construction Co., at 1327; Rodriguez, at 382; Krombach, 827 S.W.2d. at 210; Greer v. Zurich Insurance Co., 441 S.W.2d 15, 27 (Mo.1969). Finally, the fact that the parties may disagree on the interpretation of a term or clause in an insurance policy does not create an ambiguity. Lang, at 830.
As a general rule, exceptions and limitations (i.e. exclusion clauses) should be strictly construed against the insurer and ambiguities are to be resolved in favor of the insured. RLI Insurance Co., at 231; Sargent Construction Co., at 1326; Interco, Inc., at 1266; First Southern Ins. Co. v. Jim Lynch Enterprises, Inc., 932 F.2d 717, 719 (8th Cir.1991); Hobbs v. Farm Bureau Town & Country Ins. Co. of Missouri, 965 S.W.2d 194, 197 (Mo.App.1998); Southern General, at 782. "In reviewing insurance policies, the policies will be given a reasonable construction and interpreted so as to afford coverage rather than defeat coverage." RLI Insurance Co., at 231 quoting Nixon v. Life Investors Ins. Co., 675 S.W.2d 676, 679 (Mo.App.1984). Unless the insurer meets its burden of proving a policy exclusion effective, such a clause will be held ambiguous and the court will adopt a construction favorable to the insured. Southern General, at 782 citing Omaha Indemnity Co. v. Pall, Inc., 817 S.W.2d 491, 494 (Mo.App.1991).
The defendants/counterclaim plaintiffs contend that an ambiguity exists simply by virtue of the fact that the declaration page and the majority of the "Part I  Liability" section provide full coverage for any "insured person", yet in the "Other Insurance" section, a lesser amount of coverage is provided for "non-family member insured person". Citing Behr v. Blue Cross Hospital Service, 715 S.W.2d 251, 256 (Mo. 1986), they argue that an ambiguity is created when the total contract contains a promise by the insurer (for coverage) and then takes it away in another part of the contract. It is not as simple as that. This axiom cannot be accepted at face value standing alone because all insurance contracts generally promise something at one point and take it away at another by use of limitations and exclusions. Consequently, all insurance contracts would be ambiguous and always construed in favor of coverage. What this axiom articulates is the premise that an insurance contract cannot clearly provide coverage for a specific occurrence or insured in one part, then in another part clearly not provide coverage for the same specific occurrence or insured. However, there is no prohibition under Missouri law for an insurance contract to set forth the maximum amount the insurer will pay in one part, then stipulate the circumstances under which the insurer may lower the maximum amount it will pay; as long as all considered sections contain plain and unambiguous terms, and reading them together does not create an ambiguity.
*1153 The defendants/counterclaim plaintiffs argue that ambiguity arises from the wording of the subject clause. They contend that an ambiguity exists because the subject clause states that Farmers will "provide insurance for an insured person ..." (emphasis added); however, in the liability section (specifically, "PART I  LIABILITY, Coverage A-Bodily Injury, Coverage B-Property Damage"), the policy provides that Farmers "will pay damages for which any insured person is legally liable ..." (emphasis added). They contend that a reasonable interpretation of the language used in the policy is that Farmers will pay damages, up to the full coverage limits of $250,000.00 per person and $500,000.00 per occurrence, for all insured persons, including non-family member permissive users of the insured vehicle. They further contend that the promise to "provide insurance" in the subject clause then refers to a situation in which the non-family member permissive user insured person is not legally liable for damages or the situation in which the non-family member permissive user insured person has a claim for damages. Farmers, on the other hand, contends that the language of the subject clause is not ambiguous because when the policy states "provides insurance", it clearly refers to liability protection, as the subject clause is in the liability portion of the policy.
The Court disagrees that the phrase "provides insurance" clearly refers to liability protection simply by virtue of the fact that the subject clause is in the liability portion of the policy. The policy defines "damages" as the "cost of compensating those who suffer bodily injury or property damage from an accident." The policy does not define the term "insurance". An ambiguity does exist with regard to the wording of the subject clause because the policy first states specifically that Farmers will pay "damages" for which any insured person is legally liable; yet the subject clause states that Farmers will provide "insurance" only up to a certain amount for a specified insured person; i.e. non-family member permissive user, without apparently any regard to whether such person is legally liable. Since the policy makes a point to state that "damages" will be paid only in the event "any insured person is legally liable", and the subject clause does not make this distinction, an ambiguity exists. Thus, regardless of the amount Farmers will pay for a non-family member permissive user, the subject clause is ambiguous as to whether it will pay only when the non-family member permissive user is legally liable (for such damages) or will also pay when the non-family member permissive user has his/her own claim for damages. Thus, the clause will be construed as to provide insurance for the claims of damages against Jeffery Koch.[5]
However, a finding of ambiguity in the wording of the clause does not automatically extend full coverage for the claims asserted against Jeffery Koch. The ambiguity in the wording simply goes to whether or not Jeffery Koch, pursuant to this clause, is entitled to coverage regardless of whether he is legally liable for damages or has his own claim for damages. The extant of coverage; i.e. full policy limits vs. minimum coverage as provided by Missouri's financial responsibility law, is another matter.
It is not unusual for automobile insurance policies to contain different limits of liability with respect to different classes of insured persons. For example, as in this case, the limit applicable to the named insured may be higher than that applicable to persons using the insured vehicle with the permission of the named insured. 7A Am.Jur.2d. Automobile Insurance § 428 (1997); Marjorie A. Caner, J.D., Annotation, Validity and Operation of "Step- *1154 Down" Provision of Automobile Liability Policy Reducing Coverage for Permissive Users, 29 A.L.R.5th 469 (1995). Such provisions are commonly referred to as "step-down" clauses.[6] Although this Court is unable to locate any Missouri caselaw which addresses the validity of these clauses, most courts have, generally, upheld the inherent validity of step-down clauses. 29 A.L.R.5th 469 (1995) (citations omitted).
However, the issue before this Court is not the validity of the subject clause, but rather is the subject clause, otherwise presumably valid, rendered unenforceable because its physical placement in the policy is ambiguous. After careful consideration, the Court determines that the location of the subject "step-down" clause within the policy creates an ambiguity.
The subject "step-down" clause purports to limit coverage available to non-family member insured persons to that mandated under Missouri's financial responsibility law. As written, this liability limit is actually an exclusion because it does not endow coverage, but, rather, limits the obligation of the insurer. See, Southern General, at 782. This exclusion is not stated in the "Exclusions" section of the policy, nor in the "Limits of Liability" section of the policy. It is stated only at the end of the "Liability" section of the policy in the subsection entitled "Other Insurance". What is interesting is that the subject clause is the only clause within the "Other Insurance" section which does not refer to the existence of other insurance as the basis for limiting coverage. Thus, it is unclear as to whether this clause kicks in only if other insurance exists and the insured person is a non-family member or this clause operates to limit coverage solely by reason of the class of the insured person. Farmers argues that it is irrelevant that the subject clause is not contained in the "Exclusions" or "Limits of Liability" sections because it just so happens that other insurance is involved in this case. This begs the question because the clause itself does not refer to the existence of other insurance.
The policy clearly defines "insured person" to include non-family member permissive users of the insured vehicle. It thereafter lists "Exclusions" to full policy coverage, followed by "Limits of Liability" which further narrows the scope of coverage. Missouri courts have held that exclusions of coverage placed after the definition of covered persons do not, standing alone, create an ambiguity. Southern General, at 782; Automobile Club Inter-Insurance Exchange v. Farmers Ins. Co., 778 S.W.2d 772, 775 (Mo.App.1989). Here, the exclusion is not placed after the section defining covered persons but instead placed at the end of the "Liability" part of the policy, far removed from the section defining "insured persons" and the sections highlighting exclusions and coverage limitations. Given the placement of the subject "step-down" clause, a reasonable person reading the policy as a whole, would not understand the clause to provide an additional limitation on coverage since it is not listed as an "exclusion" or as a "limit of liability".
The insurer, as the drafter of the policy, "has the opportunity to clearly word exclusions and limits of liability." Southern General, at 782. Since an ambiguity exists *1155 due to the "step-down" clause's location within the policy, the policy must be construed in favor of the insured. Thus, this Court holds that coverage exists under the policy issued to William Worrall to Jeffery Koch for any alleged and proven injuries suffered by defendants/counterclaim plaintiffs[7] up to the full policy limits of $250,000.00 per person and $500,000.00 per occurrence. Furthermore, under the terms of the policy Farmers is obligated to defend any suit brought against Jeffery Koch and shall make additional payments up to the full policy limits of the policy.
NOTES
[1] Defendants allege that the accident was the result of Koch's negligence when he fell asleep at the wheel and lost control of his car. However, the issue of Koch's alleged negligence is not an issue in this lawsuit, nor an issue germane to the resolution of the instant motion.
[2] It is not known by the Court as to whether Koch sustained injuries in the accident.
[3] State Farm Ins. Co. is an intervenor-plaintiff in this lawsuit as it is the excess carrier under a policy issued to John and Judy Koch, parents of Jeffery Koch. However, at this time, no dispute involving State Farm's excess coverage is before the Court, especially with regard to the instant motion.
[4] The declaratory judgment counterclaimants are Brian Worrall, Wanda Ford, and Dan and Trudy Brothers, parents of decedent Christopher Brothers. The counterclaims are virtually identical with respect to the construction of the "drop down clause". The Brothers have an additional counterclaim regarding their wrongful death claim with respect to their son; however that counterclaim is not germane to the matter presently before the Court.
[5] Defendant Pierrousakos makes an additional argument regarding an ambiguity created by different interpretations of the words "damages" and "insurance". The Court found this argument to be weak at best, and since Pierrousakos does not have a counterclaim pending before the Court, dismissed this argument as meritless.
[6] Farmers consistently refers to the subject clause as a "drop-down" clause; however, in actuality the subject clause is more commonly referred to as a "step-down" clause. A "drop-down" clause generally comes into play in situations involving excess carriers and refers to a limit of liability clause which provides that if the underlying primary insurer's coverage is exhausted by reason of losses paid under the policy, the excess carrier(s) will "drop-down" and provide coverage for losses in excess of the amount specified in the underlying policy. See, Interco, Inc. v. National Surety Corp., supra. The subject clause does not refer to coverage by an excess carrier but instead attempts to impose a lower limit of coverage (for Jeffery Koch) by virtue of status as a non-family member permissive user. Hence, the subject clause is akin to a "step-down" clause since it seeks to provide lower coverage.
[7] Although defendant Pierrousakos is not a counterclaim plaintiff, it is understood by the Court that he is making a claim against the policy through a separate lawsuit against Jeffery Koch for injuries sustained in the March 8, 1997 accident. Consequently, the Court's determination regarding the policy coverage limits afforded to Jeffery Koch are applicable to defendant Pierrousakos' claims.