**WINDSOR INSURANCE COMPANY, Appellant,**

v.

**Artricia LUCAS, et al., Respondents.**

**No. ED 76614.**

Missouri Court of Appeals, Eastern District, Division Three.

April 25, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 7, 2000.

Application for Transfer Denied Aug. 29, 2000.

**152**

Lawrence J. Permuter, St. Louis, for appellant.

Gretchen Myers, William P. Hogan, St. Louis, for respondent.

CLIFFORD H. AHRENS, Judge.

Windsor Insurance Company ("Windsor") appeals from a judgment of the Circuit Court of St. Louis County finding the "step-down" provision of an automobile insurance policy, which provided lesser coverage for losses caused by a permissive driver unrelated to the insured, to be ambiguous as well as contrary to Missouri public policy. Windsor also appeals the trial court's award of attorney's fees to the defendants. We reverse and remand.

On July 13, 1997, Artricia Lucas ("Lucas") gave Charles Billups ("Billups"), her boyfriend, permission to drive her automobile. While driving, Billups was involved in an accident. Several individuals have made claims against Billups for alleged negligent operation of the vehicle.

Lucas was insured by Windsor. The applicable insurance policy provided maximum coverage for bodily injury in the amount of $100,000 per person and $300,000 per accident. However, the policy contained a "step-down" provision which limited coverage to $25,000 per person and $50,000 per accident, the minimum insurance coverage required under Missouri law, in the event of injury caused by a "non-relative" driver whom Lucas permitted to drive the car ("permissive driver"). Windsor, arguing for the applicability of the "step down" provision, filed an action in interpleader to determine the extent of its liability.

In its judgment and order, the trial court noted the declaration page of the policy provided for bodily injury liability coverage in the amount of $100,000 per person and $300,000 per accident. The trial court also stated the language providing for reduced coverage of permissive users was found only in the "definitions"

section of the policy and not in the "limits of liability" section. Claiming the "step-down" provision was contradicted in at least five sections of the policy, the trial court declared the terms of the policy ambiguous and declared "step-down" clauses for permissive users against Missouri public policy. Consequently, the trial court ordered the limits of liability applicable to Billups under Lucas's insurance policy to be $100,000 per person and $300,000 per accident.[1] This appeal follows.

In its first point on appeal, Windsor contends the trial court erred in finding the "step-down" provision limiting liability for permissive users was ambiguous as the "step down" limits were specifically articulated in the "limitations of liability" section and not contradicted elsewhere in the policy. Windsor also contends the trial court erred in determining such "step-down" provisions are contrary to Missouri public policy because Missouri law, as well as the law of other states, has recognized and enforced such clauses in the past. We consider these two issues separately.

■■■ We first address the issue of ambiguity in the insurance policy. The interpretation of the meaning of an insurance policy is a question of law. *Buck v. American Family Mut. Ins. Co.,* 921 S.W.2d 96, 98 (Mo.App.1996). When evaluating the meaning of an insurance policy, an ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of words used. *Id.* Courts will not create an ambiguity in order to distort the language of an unambiguous insurance policy. *Id.* Where provisions of an insurance policy are ambiguous, they are construed against the insurer. *Id.* Further, an ambiguous

provision of a policy designed to cut down, restrict, or limit insurance coverage already granted, or introducing exceptions or exemptions must be strictly construed against the insurer. *Id.* However, the fact the parties may disagree on the interpretation of a term or clause in an insurance policy does not create an ambiguity. *Lang v. Nationwide Mutual Fire Ins. Co.,* 970 S.W.2d 828, 830 (Mo.App.1998).

■ The declarations page, under the headings of "coverage" and "limits of liability," lists bodily injury at $100,000 each person and $300,000 each accident. The first page of the insurance policy states "[t]he declaration page along with this policy hereby form the agreement between the insured and Windsor." The definition of the term "insured" used in the "Liability" portion of the policy states:

"insured(s)" means...[a] person using your insured car with your permission. The limits of liability for a permissive user will be equal to minimum limits of liability specified by the Financial Responsibility Law of the state in which the accident occurs.

Under the heading "Limits of Liability – Part A Only," the policy states:

Regardless of the limits of liability shown on the Declarations page the bodily injury and property damage liability...for each insured, other than you and a relative, will equal the limits of the Financial Responsibility Law of the state in which the accident occurred.

We cannot say as a matter of law that the insurance policy is ambiguous or creates uncertainty or indistinctness in the meaning of words used. The "Liability" portion of the policy twice mentions the

1. In their counterclaims for declaratory judgment against Windsor, several individuals injured in the accident asked the Court to order that Windsor provide Lucas with insurance coverage in the amount of $100,000 per person/$300,000 per occurrence in the event of a claim of negligent entrustment against her. On the issue of Lucas's liability, the trial court gave Windsor the option of either paying into the court registry the $100,000/$300,000 poli-

cy limits or waiting for a determination of the liability, if any, of Lucas herself. In its judgment the trial court emphasized Windsor's payment into the court's registry for the acts of Billups does not relieve Windsor from any obligation under its contract to defend and provide coverage for any liability of Lucas. This issue was not raised in Windsor's "brief of appellant," so we do not consider the issue on appeal.

"step down" provision in calculating liability limits for permissive drivers, and nowhere does the policy state the limits on the declaration page are final and absolute in every situation.

We recognize there is no prohibition under Missouri law for an insurance contract to set forth the maximum amount the insurer will pay in one part, then stipulate the circumstances under which the insurer may lower the maximum amount it will pay, so long as all considered sections contain plain and unambiguous terms, and reading them together does not create an ambiguity. *See Farmers Ins. Co., Inc. v. Pierrousakos*, 49 F.Supp.2d 1148, 1152 (E.D.Mo.1999). The insurance policy read as a whole is unambiguous in creating a "step-down" provision limiting the liability when the automobile is operated by a non-relative permissive user. The trial court erred in finding ambiguity in the contract and awarding coverage in the amount of $100,000 per person and $300,000 per accident.

We now consider whether "step down" provisions in automobile insurance policies are contrary to Missouri public policy. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy. *Muschany v. United States*, 324 U.S. 49, 66–67, 65 S.Ct. 442, 451, 89 L.Ed. 744, 756 (1945). Exceptions based on public policy must usually find support in necessary implication from statutory provisions. *Halpin v. American Family Mut. Ins. Co.*, 823 S.W.2d 479, 483 (Mo.1992).

Missouri courts recognize freedom of contract in liability insurance. *Halpin*, 823 S.W.2d at 483. However, it is the public policy of Missouri to assure financial remuneration for damages sustained through the negligent operation of motor vehicles on the public highways of the state not only by the owners of such automobiles but also by all persons using such vehicles with the owner's permission. *Allstate Ins. Co. v. Sullivan*, 643 S.W.2d 21, 22 (Mo.App.1982). This public policy is evidenced by Missouri law, which requires an automobile owner's policy of liability insurance to insure "any other person...using any such motor vehicle...with the express or implied permission of such named insured...subject to limits...[of] twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and,...fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident." Section 303.190 RSMo (1994). The issue here is whether an insurer must provide a permissive user with the same liability limits as the named insured or whether an insurer can provide greater coverage to the named insured so long as a permissive user's limits comply with the minimum limits stipulated in the Missouri Financial Responsibility Law, section 303.190 RSMo (1994). We hold Missouri public policy does not preclude "step down" provisions in insurance policies which contain lesser liability limits for permissive drivers so long as the lesser limits comply with the minimum limits provided in the Missouri Financial Responsibility Law.

Although this issue is one of first impression in Missouri, *Trantham v. Old Republic Ins. Co.*, 797 S.W.2d 771 (Mo.App. 1990) is instructive. In *Trantham*, the plaintiff, a passenger in a rental truck operated by driver, was injured when the truck overturned. *Id.* at 772. Driver had rented the truck from Ryder Truck Rental Company which was covered by an insurance policy issued by Old Republic. *Id.* The insurance policy issued by Old Republic to Ryder provided basic limits of $1,000,000 and provided insurance to "any other person while using an owned automobile...with the permission of the named insured." *Id.* The policy also provided that "the insurance afforded to [a] renter...shall also be subject to the terms, including the...limits of liability, conditions, restrictions, and limitations in the lease/rental agreement." *Id.* at 773. Ry-

der's rental agreement with driver provided limits of liability "up to the requirements of the state financial responsibility law of the state in which an accident may occur or $10,000/$20,000 bodily injury...if no financial responsibility law applies." *Id.* at 773. The court found that since both documents clearly reflected the intention to provide exactly what the law requires, namely the liability mandated by Missouri's Financial Responsibility Law, the language in the rental agreement limiting liability for renters and lessors was enforceable. *Id.* at 774. Therefore, Old Republic was liable only to the extent required by Missouri's Financial Responsibility Law, $25,000 per person. *Id.* at 772, 774.

*Trantham* permitted enforcement of a "step-down" provision located in a rental agreement and incorporated into an insurance contract. In addition, many other jurisdictions allow step-down provisions which limit the liability of permissive drivers to the statutory minimum. *Balboa Ins. Co. v. State Farm Mutual Auto. Ins. Co.*, 17 Ariz.App. 157, 496 P.2d 147 (1972); *Mid–Century Ins. Co. v. Haynes*, 267 Cal. Rptr. 248, 218 Cal.App.3d 737 (6 Dist. 1990); *Lehman–Eastern Auto Rentals, Inc. v. Brooks*, 370 So.2d 14 (Fla.App. 1979); *Harden v. Monroe Guar. Ins. Co.*, 626 N.E.2d 814 (Ind.App.1993); *Yosemite Ins. v. State Farm Mut. Auto. Ins.*, 98 Nev. 460, 653 P.2d 149 (1982); *Rao v. Universal Underwriters, Ins.*, 228 N.J.Super. 396, 549 A.2d 1259 (A.D.1988); *Liberty Mut. Ins. v. Aetna Cas. & Sur.*, 168 A.D.2d 121, 571 N.Y.S.2d 735 (1991); *Bowers v. Estate of Feathers*, 448 Pa.Super. 263, 671 A.2d 695 (1995); *Universal Underwriters, Ins. v. Metro. Property*, 298 S.C. 404, 380 S.E.2d 858 (App.1989); *Cullum v. Farmers Ins. Exchange*, 857 P.2d 922 (Utah 1993).

The jurisdictions which prohibit "step down" provisions are generally guided by statutory language prohibiting such clauses. In *Smith v. National Indemnity Company*, 57 Wis.2d 706, 205 N.W.2d 365

(1973), an insurance policy provided limits of $10,000/$20,000 for renters but $100,000/$300,000 for the named insured. *Id.* at 366. A Wisconsin statute provided no policy of insurance shall be issued or delivered unless it contained a provision reading substantially as follows:

> The indemnity provided by this policy is extended to apply, in the same manner and under the same provisions as it is applicable to the named insured, to any person or persons while riding in or operating any automobile described in this policy when such automobile is being used for purposes and in the manner described in said policy.
>
> *Id.* at 367.

The Wisconsin Supreme Court interpreted this statutory language to preclude defendant from issuing a policy that granted higher dollar limits of protection to the named insured than to car renters. *Id.* at 369. In *Hardware Mut. C. Co. v. General A.F. & L. Assur. Corp.*, 212 Va. 780, 188 S.E.2d 218 (1972), the Virginia Supreme Court held the applicable statutory code sections were guided by a remedial purpose. *Id.* at 221. Consequently, each policy of automobile liability insurance must furnish a permissive user the same coverage as is afforded the named insured. *Id.* at 221. These cases are distinguishable since Missouri statutory law contains no clear implication that "step down" provisions should be prohibited. Guided by *Trantham* and the jurisdictions whose statutes do not prohibit such provisions, we cannot say the enforcement of "step down" provisions is against Missouri public policy. Consequently, the trial court erred in holding such provisions are against public policy.

■ Windsor's second point on appeal argues the trial court erred in awarding attorney's fees to the defendants. Windsor explains that absent statutory authorization, contractual agreement, or "special" or "very unusual" circumstances, each litigant must bear his or her own attorney fees. Windsor argues that since none of

these exceptions are present, the trial court was not justified in awarding attorney's fees.

■ Although awards of attorney's fees are left to the broad discretion of the trial court and will not be overturned except for an abuse of discretion, this standard is based on the assumption that the court had the authority to award the fees. *Consol. Public Water Supply v. Kreuter,* 929 S.W.2d 314, 316 (Mo.App.1996). Because our inquiry involves the question of the trial court's authority to award attorney's fees, this court need not defer to the trial court's decision. *Id.*

■ Windsor brought this case under the Declaratory Judgment Act in order to determine its rights and obligations under the insurance contract. In any proceeding under the Declaratory Judgment Act, the trial court may make such award of costs as may seem equitable and just. Section 527.100 RSMo (1994). However, costs under section 527.100 does not necessarily include attorney's fees. *DCW Enterprises, Inc. v. Terre du Lac Ass'n, Inc.,* 953 S.W.2d 127, 132 (Mo.App.1997). Rather, the American Rule applies to declaratory judgment actions. *Id.* Under the American Rule, "absent statutory authorization or contractual agreement, with few exceptions, each litigant must bear his own attorney's fee." *David Ranken, Jr. Technical Institute v. Boykins,* 816 S.W.2d 189, 193 (Mo.1991).

■ "Special circumstances" is an exception to the American Rule. *DCW Enterprises, Inc.,* 953 S.W.2d at 132. This exception is narrow and must be strictly construed. *Id.* Another exception is when a court of equity finds it necessary to award attorney's fees in order to balance benefits, but this occurs only if "very unusual circumstances" can be shown. *Id.* Both of these exceptions are rare and have been confined to limited fact situations. *Id.* Among the limited scenarios where "special" or "very unusual" circumstances have been shown include intentional mis-

conduct by a party; an action brought by an estate beneficiary who has successfully brought litigation beneficial to the estate as a whole; and an action where a litigant has successfully created, increased, or preserved a fund in which non-litigants were entitled to share. *Id.*

No statutory or contractual grounds warrant assessing liability for attorney's fees against Windsor. In addition, the present scenario does not qualify as a "special" or "very unusual" circumstance as to justify the trial court's award of attorney's fees. Nothing in the record suggests Windsor engaged in intentional misconduct or any other limited exception that would warrant obviation of the stringent American Rule requiring parties to bear their own attorney's fees. Windsor simply brought, in good faith, an ordinary interpleader action to determine the extent of its liability. *See American Family Mutual Insurance Company v. Brown,* 631 S.W.2d 375 (Mo.App.1982) (Insured not entitled to attorney's fees in action brought by insurance company to determine whether policy covered liability for use of a non-owned automobile). Windsor is not liable for defendants' attorney's fees.

The case is reversed and remanded with instructions to enter judgment consistent with this opinion.

RICHARD B. TEITELMAN, P.J., concurs.

LAWRENCE E. MOONEY, J., concurs.